WISDOM, et ux. *v.* STEGALL.

Feb. 1, 1954

No. 39059 51 Adv. S. 101 70 So. 2d 43

*W. W. Pierce,* Jackson, for appellants.

*Ernest Shelton,* Jackson, for appellee.

ETHRIDGE, J.

This is an appeal from a decree of the Chancery Court of the First Judicial District of Hinds County, establishing a boundary line between two lots in the City of Jackson, one of which belonged to appellants, L. T. Wisdom and wife, complainants below, and the other to appellee, Mrs. Annie E. Stegall, defendant below. Since this case must be reversed and remanded because of an error with reference to a survey based upon the chancellor's view of the premises, we will not discuss the evidence concerning the proper boundary line between the two lots, except to the extent that it is necessary to explain the basis of the decision.

The lots of appellants and of appellee are rectangular in shape, and run north and south, the south ends facing upon Robinson Street. The Stegall lot is immediately to the east of the Wisdom property. Two surveys were made and introduced into the record prior to the rendition of the chancellor's opinion. One was by W. A. Akin, Hinds County Surveyor, and the other was by Swinney and Scott, civil engineers, and hereinafter referred to as the Scott survey. The parties to this suit are disputing a strip of land between their lots of about two feet in width. The record indicates a continuing controversy between the parties for several years, and everything about this case is of a de minimis nature except the principle upon which it is reversed. After hearing consider-

able detailed testimony concerning the surveys and an alleged agreement with appellants by appellee's predecessor in title, Mrs. Stuart, which in effect would place the disputed two-foot strip on appellants' property, the chancellor rejected appellants' argument, and in an oral opinion of February 2, 1953, hereinafter referred to as the first opinion of the trial court, he established the southwest corner of Lot 8 of Block O, Julienne Survey, which is the southwest corner of appellants' land, at the point fixed by the Scott survey, and then he apparently adopted in substance the Scott survey. This first opinion of the trial court finally stated: "It is ordered and directed that Mr. W. E. Johnson, a Civil Engineer with offices in the City of Jackson, proceed to the property in question, survey and plat the property as described in this opinion and furnish the Court with a copy thereof before the final decree is entered. The expense of this survey will likewise be borne equally by the parties."

On February 17 the chancellor filed his second opinion in the case. That opinion first recited: "The Court having carefully considered all of the evidence presented in this case and having personally gone upon the properties in question with Mr. William E. Johnson, a competent Civil Engineer and Surveyor of Jackson, Mississippi, and viewing, inspecting and otherwise analyzing the situation which exists between the parties hereto, makes the following findings, . . ." The opinion then fixed the boundaries of the appellants' property in accordance with concrete monuments and the measurements of the W. E. Johnson survey. The concrete monuments were those placed on the lots by Johnson when he went on the premises with the chancellor, as recited in the chancellor's second opinion. This opinion also directed confirmation of title in both parties according to these monuments. It then recited: "That the four corners of Complainants' property as above described were established, fixed and marked with concrete markers by the

said William E. Johnson, Surveyor, by authority of and at the direction of this Court, and that the party line between Complainants and Defendant is fixed as a straight line between the concrete monument set by the said William E. Johnson as the Southeast corner of Complainants' property and the concrete monument set as the Northeast corner of Complainants' property, which said line has been further marked and identified by said Surveyor by use of wooden stakes and keil marks on the East runway of Complainants' driveway at intervals between said concrete monuments marking said corners."

The Johnson survey was made a part of the final decree. In other words, between the date of the first opinion of the trial court, February 2, and of the second opinion, February 17, the later document recites that the chancellor went upon the property in question with the surveyor Johnson and viewed, inspected and analyzed the situation on the premises; that Johnson then fixed the four corners under the direction of the court with concrete markers, and made a survey of it. The Johnson survey, dated February 7, 1953, apparently departs in some minor respects from the Scott survey upon which the chancellor's first opinion was based. It is not clear whether the four principal points of appellants' lot under the Johnson survey are the same as those of the Scott survey, upon which the first opinion was based. A comparison of the two surveys indicates some slight differences in the location of the southwest corner of Lot 8, and in the angles of the lines running north and south. Moreover, the Johnson survey, according to the second opinion of the court, is expressly based upon the chancellor's view, inspection and analysis of the premises. It is not contended that either party had notice of the intention of the chancellor to view the premises, or any notice of the fact that Johnson would make a survey.

On February 19 appellants filed a motion with the court to permit them to take the testimony of W. E. John-

son, the surveyor who had made the third survey of the premises after going on the property with the chancellor. This motion incorporated in it twelve particular interrogatories to Johnson concerning the manner in which Johnson had made his survey; and it averred that the movants had no knowledge or information concerning Johnson's procedures in making the survey, and that the requested interrogation of Johnson was necessary to appellants in order to submit the matter properly for final decree. The chancery court overruled that motion.

On February 20, 1953, the trial court entered its final decree. It initially recited that the cause came on to be heard on the pleadings and oral and documentary evidence taken and heard in open court. It then described the land according to the Johnson or third survey, and the concrete monuments placed by Johnson. The decree then recited: "That the concrete monuments referred to in the description above were erected by William E. Johnson, a Civil Engineer and Surveyor of Jackson, Mississippi, under and by authority of the court, after viewing, inspecting and taking measurements on said premises." The decree further provided that the four corners were those which were fixed and established by the surveyor Johnson by his concrete monuments, and then forbade occupancy by the respective parties of the lands reflected by the Johnson survey and monuments to be on the other's property. It made the Johnson survey a part of the decree, and, according to the descriptions in the Johnson survey, confirmed the respective titles in appellants and appellee.

Appellants argue that the chancellor committed reversible error in going upon the premises and in viewing and analyzing the property with the surveyor Johnson, without having given appellants notice of his proposed actions, and in further denying appellants the opportunity to interrogate Johnson concerning the details and basis of his survey. Appellants say that as a result the chan-

cellor based his decree upon private knowledge derived from a view of the premises and from the Johnson survey, concerning which appellants have had no right to examine Johnson or to test its validity; and that it was necessary for the trial court to bottom its decree upon the testimony of witnesses in open court. Appellants do not contend that the chancellor had no right to view the premises, but they assert that they should have had notice thereof and an opportunity to interrogate the surveyor Johnson, whose survey was made during or as a result of the court's view of the premises; and that therefore it was error to overrule their motion for permission to interrogate Johnson.

 We think that appellants are correct in these contentions. The first opinion of the court was based substantially upon the Scott survey. Appellants and appellee interrogated Scott concerning his survey, and that testimony is in the record. But the second opinion of the court and the final decree are expressly based upon the survey of Johnson and the concrete monuments fixed by Johnson in accordance with it, and in accordance with the view, inspection and analysis of the premises by the chancellor. And appellants, as well as appellee, had no opportunity to examine Johnson about his survey, upon which the final decree is based.

 It is an essential part of procedural due process that a party to a suit should have the right to interrogate the witnesses upon whose evidence the decree is based, and the learned chancery court erred in overruling appellants' motion requesting that right. In Hester v. Bishop, 193 Miss. 449, 10 So. 2d 350 (1942), Bishop sued Hester to enjoin as a public and private nuisance a stock and auction pen operated by Hester. The chancery court by consent set the case for hearing in vacation, but no further hearing in vacation was had. The next thing that happened was the rendition of a final decree in vacation, by which the court sustained the bill upon the merits and

directed issuance of the injunction. The defendants then filed a motion which called to the attention of the court that they had not had an opportunity to present their witnesses on the merits, and averred that they had a good defense. This motion was heard at the next regular term. The record then reflected that at that point the court repaired to the scene and location of the cattle pen and afterwards returned to the courthouse, where the testimony of one witness, apparently called by the court, was heard. The defendants then asked for the opportunity of introducing witnesses. The chancellor thereupon dictated to the court reporter what he had seen and heard on his view of the premises, including what had been told him by the school children, and overruled the motion and granted the injunction. On appeal, the case was reversed and remanded. It was held that the final decree was invalid, and that the motion to vacate it should have been sustained. It was then said:

''And this right to be heard cannot be cut off by an inspection or view of the premises by the trier of the facts, however convincing such an inspection may have been to him. The parties, defendants as well as complainants, have the right to make a record of what their own witnesses introduced by them and at their selection and call will have to say even if the trier, on account of his view of the premises, would not be moved by such witnesses—for appeals are given by law in cases such as this.

''We do not go further into the matter of the view or inspection as made in this case than to say that the trier of the facts may not receive any ex parte oral communications outside of court, whether on an inspection or elsewhere, and use these as factors in arriving at a decision. Communications as to facts on the merits of any litigated case may be presented only by sworn witnesses, or by the agreement of counsel.''

The principles applied in Hester v. Bishop, supra, are pertinent here. See also 53 Am. Jur., Trial, Sec. 1128; Anno. 97 A. L. R. 334 (1935) ; Denver Omnibus and Cab Company v. J. R. Ward Auction Co., 47 Colo. 446, 107 P. 1073 (1910). It was error to overrule appellants' motion for an opportunity to interrogate the surveyor Johnson. Appellants had the constitutional right to present in full their view of the case, including interrogation of all witnesses upon which the decree was based. It may be that upon another trial the chancery court will reach the same result. We express no views whatever on the merits. ▮▮▮ However, the denial of this right of procedural due process must be presumed to have prejudiced appellants.

Reversed and remanded.

All Justices concur, except *Gillespie, J.,* who took no part.