# IN THE COURT OF APPEALS 10/15/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-CA-00563 COA

GREG WILLIAMS, JAMES R. BIDDIX, AND MARTHA L. BIDDIX

APPELLANTS

v.

MAURICE ROBERTS D/B/A GULF PARK ESTATES AIRPORT, VICKI ROBERTS, JOHN TARANTO AND BRENDA TARANTO

APPELLEES

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. KENNETH BARKLEY ROBERTSON

COURT FROM WHICH APPEALED: JACKSON COUNTY CHANCERY COURT

ATTORNEY FOR APPELLANTS:

EARL L. DENHAM

ATTORNEY FOR APPELLEES:

B.G. PERRY

NATURE OF THE CASE: ACQUISITION OF PROPERTY BY ADVERSE POSSESSION

TRIAL COURT DISPOSITION: ENTERED JUDGMENT CONFIRMING TITLE TO DISPUTED PROPERTY IN FAVOR OF THE DEFENDANTS

MANDATE ISSUED: 7/3/97

BEFORE FRAISER, C.J., KING, AND PAYNE, JJ.

KING, J., FOR THE COURT:

The Appellants have appealed a judgment of the Chancery Court of Jackson County, which confirmed title to realty in the Appellees. The Appellants challenge the sufficiency of the evidence supporting the chancellor's findings and contend that the chancellor erred when he independently viewed the disputed property without notice to the parties. We find no error and affirm.

## FACTS

Since 1967, a fence had surrounded the Gulf Park Estates Airport and two sides of a commercial lot purchased by the Appellants. In 1979, the Appellees' immediate predecessors in title, Evarist Noble and Ronald Durbin purchased the airport. Noble and Durbin claimed ownership of the property surrounded by the fence. A portion of the commercial lot purchased by Appellants was surrounded by the fence and thus, claimed by Noble and Durbin. Noble and Durbin maintained that portion of the commercial lot surrounded by the fence by mowing the grass and using it as part of the airport's runway. One year after the purchase of the airport, Noble and Durbin extended the airport's paved runway several feet. The paved extension also included the portion of the commercial lot purchased by the Appellants.

In 1982, after the deaths of Noble and Durbin, the Appellee, Maurice Roberts purchased the airport from the heirs of the Noble and Durbin estates. Roberts later conveyed interests in the airport to the Appellees: Vicki Roberts, John Taranto, and Brenda Taranto. Like their immediate predecessors in interest, the Defendants believed that the fence formed the airport's boundary and maintained and used all the property surrounded by the fence.

In 1988, the Appellants purchased the commercial lot adjacent to the airport. At the time of purchase, the Appellants discovered that the airport's paved runway encroached upon the commercial lot in excess of thirty feet. The Plaintiffs informed Defendants of the encroachment, but the Appellees denied the Plaintiffs' ownership of the property.

On August 10, 1989, the Appellants filed a complaint requesting that the court eject the Appellees from the property. The court determined that the property had been adversely possessed and confirmed title to the realty in the Appellees.

## ANALYSIS OF THE ISSUES AND DISCUSSION OF LAW

I.

DID THE TRIAL COURT ERR IN FINDING THAT THE DEFENDANTS ADVERSELY POSSESSED THE PROPERTY?

Plaintiffs argue that the Defendants failed to prove adverse possession by clear and convincing evidence; therefore, the chancellor committed manifest error by confirming title in the Defendants. The Appellants are aware that a chancellor's findings will not be disturbed absent manifest error. *Westbrook v. Oglesbee,* 606 So. 2d 1142, 1146 (Miss. 1992) (citation omitted). Therefore, the Appellants primarily contend that the chancellor's finding was not supported by sufficient evidence. We disagree.

The evidence showed the following: (1) in 1967, a fence was erected on the airport property and two sides of the commercial lot purchased by the Plaintiffs; (2) since 1979, the Defendants and their immediate predecessors in title had believed that the fence established the airport's boundary and claimed ownership of all property surrounded by the fence, including a portion of the commercial lot purchased by the Plaintiffs; and (3) since 1979, the Defendants and their immediate predecessors in title had mowed the grass and utilized the disputed property as part of the airport's runway. Thus, the evidence showed that a fence had surrounded the disputed property on two sides in excess of twenty years, and the Defendants and their immediate predecessors in title had regarded, used, and maintained the disputed property as their own for at least ten years. In *Stallings v. Bailey*, similar evidence was held sufficient to establish adverse possession. *See Stallings v. Bailey,* 558 So. 2d 858, 860-61 (Miss. 1990) (evidence that owner's predecessor in title maintained fence, which encroached upon adjoining lot between six and one-half and seven feet, for a 25-year period, that predecessor used yard up to fence and regarded it as her own, and that adjoining owners' predecessors likewise recognized fence line as property line, was sufficient to establish predecessor's adverse possession). Because several of the acts performed by the Defendants and their immediate predecessors in title mirror the *Stalling* predecessor's conduct, we find that the evidence sufficiently supports the chancellor's findings. Our finding is consistent with the principle: "[I]f a fence encloses the property for a period of at least ten years, under a claim of adverse possession, title vests in the claimant and possessor, even though the fence was subsequently removed or fell into disrepair." *Stallings,* 558 So. 2d at 860 (citing *Roy v. Kayser,* 501 So. 2d 1110, 1112 (Miss. 1987)). Appellants' assignment of error lacks merit.

II.

> DID THE CHANCELLOR ERR BY VIEWING THE DISPUTED PROPERTY WITHOUT NOTIFYING THE PARTIES?

The record indicates that the chancellor went to the site and independently viewed the property without notice to the parties. The Appellants contend that the chancellor's conduct was prejudicial error. The Appellants cite *Wisdom v. Stegall* as authority supporting their contention. Although we would admonish chancellors not to inspect or view premises prior to noticing the parties, we are not convinced that the *Stegall* opinion absolutely prohibits a chancellor from inspecting or viewing premises without notice to the parties. *Stegall* was decided on the basis of procedural due process tenets.

In *Stegall*, the chancellor initially heard evidence concerning the parties' land boundary dispute and

rendered an opinion based upon the report of the defendant's surveyor. Thereafter, the chancellor went upon the premises with an independent surveyor and viewed and analyzed property without notice to the parties of his actions. Then, the chancellor rendered a second opinion based upon the independent survey and the chancellor's inspection and analysis of the premises. After the chancellor had entered the second opinion, the plaintiffs moved the court for permission to interrogate the independent surveyor. The court denied the motion and entered a final decree based upon the independent survey and inspection of the premises. The supreme court reversed stating, "It is an essential part of procedural due process that a party to a suit should have the right to interrogate the witnesses upon whose evidence the decree is based." *Wisdom v. Stegall,* 219 Miss. 776, 780, 70 So. 2d 43, 45 (1954).

Unlike the appellants in *Stegall*, the Apellants in the present case were accorded procedural due process: they had ample opportunity to examine and cross-examine the witnesses upon whose evidence the chancellor based his opinion. Therefore, no prejudicial error occurred when the chancellor viewed the property without notifying the parties. Appellants' assignment of error lacks merit.

In conclusion, we find Plaintiffs' appeal to be lacking in merit; therefore, we affirm the judgment.

**THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.**


**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**