McBRIDE *v.* STATE.

June 14, 1954

No. 39202          67 Adv. S. 92          73 So. 2d 154

*W. Arlington Jones,* Hattiesburg, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

APPELLANT IN REPLY.

LEE, J.

This is an appeal by Homer McBride from a decree of the Chancery Court of the First Judicial District of Jones County, which adjudged him guilty of contempt of court, sentenced him to pay a fine of $2,000 and serve 6 months in jail, with 4 months suspended, and which required him to execute a peace bond in the sum of $7,500, conditioned

that he will not violate the liquor laws of the State for a period of two years.

On October 28, 1952, the Attorney General filed a bill in the Chancery Court of the First Judicial District of Jones County to have declared as a common nuisance the property described as: "The Ritz Motor Court and Cafe is located 1.4 miles north of the Forrest-Jones County line in the First Judicial District of Jones County, Mississippi, on the West side of U. S. Highway No. 11 and in the northeast quarter of the southeast quarter of Section 27, Township 6, Range 13." It was charged that liquor and slot machines were, respectively, possessed and exhibited in the buildings on said property, in violation of Sections 2646 and 1073, Code 1942. On the same day, the chancellor, by his fiat, ordered the issuance of the injunction; and the same was forthwith issued and served on the defendant.

On March 14, 1953, the Attorney General, together with both the District and County Attorneys, filed a petition, in which they alleged that McBride possessed liquor on the aforesaid premises on December 19, 1952, and prayed for his citation for contempt of court for violating the previously issued temporary injunction.

The answer of the defendant admitted the location of the property, as described in the bill of complaint, and that it was owned by him. However, he denied that he operated the place. On the contrary, he averred that he leased it to one Hubert Russell on September 30, 1952. He denied that liquor and slot machines were kept and exhibited at the place and that it constituted a nuisance. He admitted the issuance of the temporary injunction and his knowledge thereof; but he denied that he was in possession of the liquor on December 19, 1952, and that he was in contempt of the decree of the court.

Ed L. Blue, in the employ of the Attorney General, testified that about 2 o'clock p. m. on September 8, 1952, he purchased one-half pint of "Early Times" liquor

from a waitress in the Cafe; that a man, about 50 years of age, with light brown hair and weighing over 200 pounds, reached under the counter, got the liquor, gave it to the waitress, and that she delivered it to him. He also played a slot machine for both nickels and quarters, and testified that it paid off from the nickel slot.

J. M. Bates corroborated Blue. He paid $2.25 for the liquor, saw Blue playing the slot machine, and saw others drinking in the Cafe. He swore positively that McBride was the man. He then equivocated as to his identity, but finally said that his only reason for not swearing definitely that McBride was the man was that he might have an identical twin.

There was introduced in evidence an authenticated copy of an executive order of the Governor, dated December 18, 1952, which recited that there was resistance to the execution of the laws in Jones and other counties, and that local officers were in need of aid; and, under Sections 119 and 217, Constitution of 1890, the Adjutant General was ordered to call out the National Guard to enforce the laws in those counties.

On December 18, 1952, Ed L. Blue made affidavit before the County Judge of Jones County to obtain a search warrant to search for intoxicating liquors on the premises, as described in the original bill of complaint; and on the same date, the County Judge issued a search warrant for that purpose. On the following day, December 19, 1952, Maj. Fielding H. Staley, with four other national guardsmen, in obedience to the command of the warrant, made a search of the premises. McBride was in one of the buildings at the time. The Major gave him a copy of the search warrant. As a result of the search, a substantial quantity of intoxicating liquor was found on the premises. At the time, McBride said: "Well, I have been kind of expecting you fellows, * * * I have been reading about these raids here and there, * * * I am sorry that I just had to get this load of

whiskey in here now for you to pick this up too." He further said that he was through with the liquor business; that he had to pay for a tip-off in Jackson and had lost his liquor too. Henry J. Randazzo gave corroboration to the manner of the search and its results. Defense counsel admitted that the other three guardsmen would testify just as Maj. Staley and Randazzo had done.

McBride testified, in accordance with his answer, that he delivered possession of the place to Blackledge about September 1, though the lease itself was dated September 30, 1952; that he was not present when Blue and Bates purchased the liquor on September 8; and that he was not in possession when the search was made on December 19. However, he did not deny that he admitted to Maj. Staley the possession of the liquor which was obtained by the search.

The appellant contends that venue was not proved and that the court was without jurisdiction.

The bill charged that the property in question was in the First Judicial District of Jones County, Mississippi. The answer admitted the location of this property, as described in the bill. The proof showed that the sale of liquor on September 8, and the possession of liquor on December 19, occurred at that place. While the description in the writ of injunction was not as full and complete as in the bill of complaint, the defendant had adequate notice by reference to the description in the bill of complaint. Alexander v. State, 210 Miss. 517, 49 So. 2d 890.

Neither was there error in the admission of the evidence which was obtained as a result of the search by the National Guard. Widespread violations justified the Governor's action. Hence the evidence was properly admitted under the authority of State v. McPhail, 182 Miss. 360, 180 So. 387, and Seaney v. State, 188 Miss. 367, 194 So. 913.

Besides, the appellant maintained that he was not in possession of the property at the time of the search. This Court has repeatedly held that a defendant cannot complain of an unlawful search of the premises of another, or where he has no right of possession such as to make him the owner for the time being. Ross v. State, 140 Miss. 367, 105 So. 846; Brown v. State, 192 Miss. 314, 5 So. 2d 426, and authorities there cited.

The objection by the State to the admission of the appellant's statement to the officer, at the time of serving the temporary injunction, that he did not have possession of the premises, was properly sustained. The statement was no part of the res gestae. Besides, it was self-serving.

The evidence was sufficient to establish the appellant's guilt of contempt beyond reasonable doubt and to the exclusion of every other reasonable hypothesis than that of his guilt. The writ of injunction was not void. It was neither erroneously nor improvidently granted. The defendant, therefore, had to obey. Hanna v. State, 169 Miss. 314, 153 So. 371.

In view of the inherent power of the court, in this kind of case, it cannot be said that the sentence under the evidence here, is excessive. Melvin v. State, 210 Miss. 132, 48 So. 2d 856, 49 So. 2d 837; Alexander v. State, supra. Appellant was anxious to show the value of his property. He testified that he had refused $90,000 for it. Consequently he should experience little difficulty in making the peace bond.

The appellant contends that the chancellor, in making his findings, took into consideration an inspection of the premises, which he made on his own motion, and that such inspection was prejudicial to his rights.

This was a quasi criminal trial. It was improper for the court, on his own motion, to make the inspection of the premises. There was no occasion for a view. The evidence however was conclusive as to guilt. Thus the

error was harmless. But, indiscriminate views by chancellors, on their own motion, is inveighed against. Even though a party litigant desires to object to a view, practically speaking, he is somewhat embarrassed and is put to a disadvantage in objecting where the chancellor signifies his intention of viewing the premises. Cf. Hester v. Bishop, 193 Miss. 449, 10 So. 2d 350; Wisdom v. Stegall, ........ Miss. ........, 70 So. 2d 43.

It is further contended that the chancellor was influenced by matters which were not in evidence. This contention arises from these circumstances:

After the chancellor made his findings, he directed the attorneys to draw a decree accordingly. Thereafter he said: "A lawsuit is not a lying contest. * * * Now, in this case one time Mr. McBride stated he had never been convicted. * * * the first time he stated he didn't remember being convicted * * * the second time * * * he said that he had not been convicted of any crime. A search of only the records of the Second Judicial District of Jones County, Mississippi, indicates that that is far from the truth. It was a material thing, I am inclined to think. * * * According to the records of Jones County, Mississippi, Mr. McBride has been convicted of at least three felonies and two misdemeanors, the misdemeanors being the possession of intoxicating liquor, and I am, therefore, going to order him held under a bond in the amount of $1,000.00 to await the action of the Grand Jury of the First Judicial District of Jones County, Mississippi, on a charge of perjury."

There was no proof in the record of the convictions which he mentioned. Consequently the chancellor obtained such information aliunde the record. His action was evidently taken under Section 2479, Code of 1942, which authorizes any court to commit a palpable perjurer to await the action of the grand jury.

In Clanton v. State, 210 Miss. 700, 50 So. 2d 567, where the trial judge committed the defendant to the custody

of the sheriff to await the action of the grand jury on a charge of perjury, it was held that the judge did not disqualify himself to try the subsequent perjury charge by reason of prejudgment of the case. ██ By the same token, it cannot be justly said that the chancellor dealt unfairly or prejudicially with the defendant, as regards his guilt and sentence, because subsequently, at the conclusion of his findings and the pronouncement of sentence, he bound the defendant over to await the action of the grand jury on a charge of perjury.

The cause is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Ethridge* and *Gillespie, JJ.,* concur.