BRADY *v.* STATE

No. 40275        January 7, 1957        91 So. 2d 751

*Deavours & Hilbun,* Laurel, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

ROBERDS, P. J.

Brady, the appellant, was convicted of the unlawful possession of a gambling device, towit, a slot machine, under Section 2047, Miss. Code 1942.

The machine was found in the "Stardust Grill", this being both the place of business and the residence of appellant and Mrs. Brady. The machine was discovered and possession thereof taken as a result of a search of the Stardust Grill by five members of the Mississippi National Guard, acting under an executive order of the Governor of Mississippi and a search warrant issued by the county judge of Jones County,—directed to any lawful officer of said county. Captain Leonard V. Lockley, Jr., was in charge of the searching squad and he had been duly authorized and directed so to do by the Adjutant General of Mississippi.

The executive order of the Governor recited that he had found it to be a fact "* * * that there is resistance to the execution of the laws of the state in Jones County, Mississippi, and finding that the local officers of Jones County, Mississippi, are in need of the aid provided for in said sections of the constitution and the code, and for the purpose of seeing that the laws are faithfully executed in Jones County, Mississippi, * * *" he issued the order,

having already recited in the order that it was being done by virtue of Sections 119 and 217 of the Constitution of Mississippi of 1890, and of Section 3975 of the Mississippi Code of 1942. The order empowered and directed the Adjutant General of Mississippi to order out such number of the national guardsmen as he might determine necessary to carry out the order.

Appellant earnestly argues on this appeal that, under the circumstances, the national guardsmen had no authority to make the search of the Stardust Grill, and that, therefore, the testimony that the slot machine was found in his possession was illegally obtained and was inadmissible in evidence. The questions raised in this regard have been determined against the contentions of appellant in State v. McPhail, 182 Miss. 360, 180 So. 387; Seaney v. State, 188 Miss. 367, 194 So. 913; McBride v. State, 221 Miss. 508, 72 So. 2d 154. Under this contention appellant specifically says the proof fails to show such a breakdown of law enforcement conditions in Jones County as justified this action on the part of the Governor. It will be noted that in the executive order the Governor specifically found and recited that such conditions did exist. We do not decide whether or not the Governor would be the sole judge as to whether such conditions did exist, for the reason that such recitals in the executive order certainly make out a prima facie case justifying the action of the Governor and the duty was upon appellant to overcome such fact, which was not done. It might be added that the executive order here, in all of its essential elements of fact, was the same as the order in the McBride case, supra. In our opinion the stated contentions are not well taken.

A copy of the executive order, duly certified by the Secretary of State, was admitted in evidence. Appellant says that such copy was inadmissible—that the original order should have been introduced. Section 4194, said Code, empowers and directs the Secretary of

State to keep a correct register of all official acts and proceedings of the Governor. Section 1725, said Code, provides that: "All public officers in this state having the charge or custody of any public books, records, papers, or writings, are authorized to certify copies of the same, which copies shall be received in evidence in all cases where the original or a sworn copy would be evidence." The Secretary of State had the authority and power to authenticate a true copy of the original which was duly on file in his office. But it is contended that the executive order found certain facts to exist, and that this presented to the jury unsworn evidence of such facts. It was necessary that these facts be determined by the governor before he was authorized to effectuate the order and select his agents for that purpose. State v. McPhail, supra. Such precedent findings constituted a part of his official duty. As above stated, an authenticated copy of the executive order of the Governor, containing substantially the same precedent findings, as the order here involved, was offered and admitted in evidence in the McBride case, supra.

Appellant says admission in evidence of this authenticated copy of the executive order, containing the findings of fact justifying the issuance of the order, denied to him the right to cross-examine witnesses as to the facts therein contained. The facts in both the original and copy, as found in the executive order, were the same. Whatever right, if any, existed in appellant to subpoena witnesses and contradict those facts applied as well to the copy as the original.

■■■ The State introduced a copy of a record in the office of the United States District Director of Internal Revenue at Jackson, Mississippi, showing the issuance by said Director of a federal license for the Stardust Grill and Cleve Brady to operate "coin-operated gaming" devices beginning July 1, 1954. This was duly certified by said Director pursuant to Section 3275, In-

ternal Revenue Code of the United States. Section 1745, Miss. Code 1942, also provides: "Copies of the records, books, and files belonging to the offices of the United States certified by the officer having charge thereof, shall be competent evidence in all cases where the originals or sworn copies could be admitted." Therefore, the Director had full power to authenticate the license. The objections in the lower court to admission of this certified copy were, (1), that it was not properly authenticated, and (2) that the State did not show it was in effect at the time the search was made and the slot machine was found in the possession of appellant. The copy was properly authenticated. While the license did not give the expiration date thereof, it is in evidence that it was an annual license, and the beginning date is given in the license as July 1, 1954, and this proceeding was instituted in November 1954 so that the jury had ample evidence to conclude the license was in full force when the search herein was made. In addition to the foregoing, appellant did not testify that the license had expired before the search. His explanation was that he had purchased the license for the purpose of operating a pinball machine. No pinball machine was found. While, as stated, the two stated objections to introduction of the federal license were made when offered in evidence in the trial court, the argument is again made here that admission of the certified copy, without the witness being on the stand, deprived appellant of the right of cross-examination. As shown above, the District Director of Internal Revenue had the authority to authenticate the copy of the license. We are aware of no rule prohibiting appellant from subpoenaing and using as a witness this official. In Burnett v. State, 72 Miss. 994, the accused was charged with the unlawful sale of intoxicating liquor. This Court held that it was proper to admit evidence showing accused had paid a license fee and procured a stamp from the United

States authorizing him to sell intoxicating liquor. This Court there said: "The court properly admitted evidence of the fact that appellant had paid the license fee and secured the stamp from the United States authorizing him to sell intoxicating liquors. This license was of no value to the defendant unless he intended to do the acts it authorized, and that he prepared to engage in retailing liquor by securing the stamp, and kept it exposed to view as one actually engaged in that business was required by the act of Congress to do, is strongly suggestive of the fact that he was actually selling intoxicants. While the question under investigation was was whether the appellant was guilty of making the particular sale testified to by the state's witness, the strong probative force of the contested evidence made it relevant to the issue being tried." Objection to the introduction of the federal license was not well taken.

■■ Appellant says the proof does not show that this slot machine was a gaming or gambling device. Whether or not it was such a device was submitted to the jury under the instructions of the State and the defendant. It was tried on the theory of fact as to whether it was such a device. The jury found it was. Therefore, we are not confronted with the question whether a non-gambling machine, so admitted as a fact, would come within the condemnation of said Section 2047. We only pass upon whether or not the evidence is sufficient to support the verdict of the jury. The machine was in the Stardust Grill. Appellant said it was there when he moved in some two years prior to the search. He said it had not been operated. It was securely attached to and rested upon a concrete base. Two or three men were needed to lift and remove it. At the trial the county attorney placed a quarter therein and the machine did not operate. It was constructed for deposit of a quarter. The machine was displayed to the public in the Grill. It was what is called a "one-armed bandit" type. Appel-

lant had a federal license to operate a gambling machine. While he says the license was for the purpose of operating a pinball machine he denied, as a witness, he had operated any kind of a machine. As bearing upon this question Captain Leonard V. Lockley, Jr., gave this testimony:

"Q. All right. Now, if anything, did he say in your presence about this machine?

A. Upon—we were riding—I was taking him back to town and he made the remark that the machine had been in there—had caused him more trouble than it was worth for the time that it had been in there.

Q. He did admit to you, on the way back, that he knew the machine was in there and had caused him considerable trouble. A. Yes, sir."

The question under consideration has given us much concern, but we have concluded that the facts, and the inferences to be drawn from the testimony, were questions properly submitted to the jury, especially in view of the fact that the manipulation of the machine, and the machine itself, were all exhibited to the personal view of the jurors. They also had the benefit of hearing the witnesses testify and of observing their conduct upon the stand.

■■ ■ Appellant says the search warrant was not served upon him, and, therefore, the evidence obtained by the search was inadmissible. Captain Lockley, who had possession of the warrant, testified that when the searching party reached the Grill, about four o'clock in the afternoon, that Mrs. Cleve Brady, and two other ladies and a man were in the grill, and that appellant was asleep in an adjoining room. Captain Lockley told Mrs. Brady of his mission and asked who was in charge. Mrs. Brady said appellant was in charge. She then went into the adjoining room and shortly appellant came forward. Captain Lockley testified at one place that he placed the warrant "On the top of the bar at the Star-

dust Grill" in front of appellant. Later he testified that he handed appellant a copy of the warrant. John T. Lewis, III, one of the searching party, testified that Lockley handed appellant a copy of the warrant. Appellant testified he was not given a copy of the warrant and Mrs. Brady and the two other ladies and the other man present testified they did not see Lockley hand the warrant to appellant. It is obvious that service, or non-service, or the warrant was a question for the jury.

Appellant was asked if he had sold intoxicating liquor at the Stardust Grill. He said he had not. Appellant complains of that here. We think he complains without merit for the reasons he said he had not been guilty of selling whiskey and because, having taken the stand as a witness, it was competent to inquire of his convictions, if any, of other crimes. Section 1693, Miss. Code 1942.

Captain Lockley testified that the searching party found seven bottles of wine while in the act of searching the Stardust Grill. Appellant assigns that as error. This testimony was elicited during the cross-examination of Lockley and there was no objection to it.

Other alleged errors are assigned and argued. We have examined and considered them and do not think any of the contentions are well taken.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie,* JJ., concur.