## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-01251-SCT

*DAVID B. CORRY AND PAUL J. CORRY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/96 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | MICHAEL B. CUPIT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | GEORGE WARD |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 4/9/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/30/98 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. David B. Corry and Paul J. Corry appeal to this court their convictions from a trial de novo without a jury in the Circuit Court of Amite County. On November 25, 1995 David Corry and Paul J. Corry were charged with various hunting violations. Specifically, David Corry was charged with the criminal offenses of hunting deer without orange, hunting deer over bait, and hunting deer without a license. Paul Corry was charged with the criminal offenses of hunting deer without orange and hunting without a license. On a first impression issue, we determine that § 49-7-33, our "baiting" statute is constitutional. There is no merit to any of the issues raised by the Corry's.

¶2. The following sequence of events led up to the charges filed against the Corrys.

### FACTS

¶3. Sometime around October 7, 1995, Mississippi Wildlife and Fisheries conservation officer Donald Foreman received information from a confidential source that someone was hunting deer over ground baited with shelled corn on Micheal Cupit's[1] land. Subsequently, on November 25, 1995, Officer Foreman, accompanied by Officer Ricky Long, went to the location where the hunting violations

were allegedly occurring. In order to reach the Cupit property, the officers crossed over land owned by Merkle Brady and E. L. Caston. Officer Long testified that while standing on land adjacent to Cupit's, he observed an individual on Cupit's land in a tree stand (approximately 15 to 20 feet off the ground) with a gun but not wearing orange. Officer Long then entered Cupit's land and ascertained that the individual in the tree stand was Paul Corry. Officer Foreman testified that he had already crossed onto Cupit's land when Officer Long made him aware of the individual in the tree stand. The defendants noted this difference in testimony. The remaining facts are not in controversy.

¶4. Paul Corry told the officers that his brother, David Corry, was also hunting somewhere on the Cupit property. There was no corn found around Paul, therefore, he was only charged with hunting deer without orange and hunting without a valid license. However, Officer Foreman then located David Corry and charged him with hunting over bait, hunting deer without orange, and hunting without a valid license[2]. Officer Foreman indicated that there was a four foot circle full of shelled corn located about thirty yards in front of the stand where David Corry was hunting.

¶5. On December 13, 1995, Paul and David Corry were found guilty of all the charges in the Justice Court of Amite County, Mississippi. On October 9, 1996, an appeal was taken to the Circuit Court of Amite County, Mississippi, where the case was tried de novo without a jury. During the course of the trial, the defendant's attorney, Michael B. Cupit, entered a motion to require the game wardens to disclose the identity of the confidential informant (which was taken under advisement and ruling reserved) and a motion to suppress the evidence (which was overruled). The defendants did not present any witnesses nor did they testify. On October 14, 1996, the Circuit Court judge entered an Order finding the defendants guilty of all charges and assessed a $100 fine per charge along with court costs. The trial court's order specifically found that Officer Long's personal observations gave the officers probable cause to believe violations were occurring and thus the right to proceed onto Cupit's property without a search warrant and issue the citations.

¶6. Also on October 14, 1996 the defendants, by and through their attorney Cupit, filed a Motion to Rule on Requests Taken Under Advisement specifically requesting that the trial court require the game wardens to disclose the confidential informant's identity. On that same date the Circuit Court entered another Order denying the defendant's motion to disclose the confidential informant's identity, specifically stating that the court found that Officer Long had probable cause to enter Cupit's land based on his personal observations and without regard to any information provided by the confidential informant. Subsequently, on October 18, 1996, the Circuit Court entered an Amended Order which reinstated the previous findings of the October 14, 1996 Order and additionally found that Miss. Code Ann. § 49-7-33 is constitutional.

¶7. The defendants appeal the Circuit Court's decision to this Court and raise the following issues:

**I. DID THE TRIAL COURT ERR IN FAILING TO FIND THAT THE GAME WARDENS' ACTIONS IN THIS CASE VIOLATED ARTICLE 3, SECTIONS 23 AND 26 OF THE MISSISSIPPI CONSTITUTION (1890) AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (1787)?**

**II. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION TO SUPPRESS?**

**III. DID THE TRIAL COURT ERR IN FAILING TO COMPEL THE GAME WARDENS TO IDENTIFY THEIR "CONFIDENTIAL INFORMANT"?**

**IV. IS MISS. CODE ANN. § 49-7-33 (1972) UNCONSTITUTIONAL?**

## LEGAL ANALYSIS

**I. DID THE TRIAL COURT ERR IN FAILING TO FIND THAT THE GAME WARDENS' ACTIONS IN THIS CASE VIOLATED ARTICLE 3, SECTIONS 23 AND 26 OF THE MISSISSIPPI CONSTITUTION (1890) AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (1787) ?**

¶8. The Corry's allege that the conservation officers conducted an illegal search in violation of the Mississippi Constitution and the United States Constitution because they did not have a search warrant and because they trespassed across three different tracts of land to make the arrests involved in this case. They cite several Mississippi Supreme Court cases in support of their contention that because the officers trespassed, their subsequent search of the land and of the defendants was illegal. They further allege that because the search was illegal, any information gained from the defendants should have been suppressed.

¶9. The Corry's maintain that the officers trespassed across two tracts of adjoining property owned by Merkle Brady and E.L. Caston respectively. We hold that the defendants do not have standing to assert a trespass on property other than their own. Trespass is not a strict liability crime as the defendants would like for us to believe. This is evidenced by the provision in the statute that the landowner can dismiss any prosecution under this section. *See* Miss. Code Ann. § 97-17-93 (Supp. 1997). "This Court has repeatedly held that a defendant cannot complain of an unlawful search of the premises of another, or where he has no right of possession such as to make him the owner for the time being." *McBride v. State*, 221 Miss. 508, 517, 73 So.2d 154, 157 (Miss. 1954) (citations omitted). Likewise, a defendant cannot complain of a trespass on the premises of another. It is for the landowner or their agent to assert the charge of trespass. *Accord [Valley Forge Christian College v. Americans United for Separation of Church and State](#)*, 454 U.S. 464, 474, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (a party may not rest his legal claims upon the rights of third parties); *Baltimore Gas and Elec. Co. v. Lane*, 656 A.2d 307, 313 (Md. 1995) (right to exclude others from property is an incidence of legal possession); *State v. Gaulke*, 503 N.W.2d 330, 332 (Wis. Ct. App. 1993) (defendants lack standing to assert alleged trespass on their father's property).

¶10. The defendants further maintain that the conservation officers trespassed upon Cupit's land in order to ascertain whether a hunting violation was occurring. Granted, lessor Cupit and the lessees, Paul and David Corry, have standing to assert a claim of trespass. However, in this case the trial court specifically found that the officers had probable cause to enter the land based on Officer Long's personal observations that led him to believe that hunting violations were then and there occurring. Pursuant to Mississippi statute "[a]n officer . . . may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence . . .." Miss. Code Ann. § 99-3-7 (1994).

An offense is being committed in the presence of an officer when he acquires knowledge thereof through one of his senses. Where through the sense of sight, or smell, or hearing, an officer receives knowledge that an offense is being committed in his presence, he may arrest the offender without a warrant.

*Moss v. State*, 411 So. 2d 90, 95 (Miss. 1982) (*citing **Reed v. State***, 199 So. 2d 803 (Miss. 1967)). Accordingly, in the case at bar we hold that once the officers observed a violation of the law being committed in their presence, they had the authority to enter Cupit's land and make a warrantless arrest and a search incident to that arrest.

¶11. The trial court is the finder of fact and made the specific finding that the officers had probable cause to enter Cupit's land based on Officer Long's personal observations. This Court will not overturn the trial court's decision unless the decision was manifestly wrong. "When a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings." **Yarbrough v. Camphor**, 645 So. 2d 867, 869 (Miss.1994) (*citing **Omnibank of Mantee v. United S. Bank***, 607 So. 2d 76, 82 (Miss.1992)). "'Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong.'" *Id.* (*quoting **Tricon Metal v. Topp***, 516 So.2d 236, 238 (Miss.1987); **Brown v. Williams**, 504 So.2d 1188, 1192 (Miss.1987)).

¶12. Officer Long testified that he observed an individual in a tree stand (approximately 15 to 20 feet above ground) with a gun but not wearing hunter orange. Officer Long further testified that based on his fifteen years of experience, he believed that the individual was hunting deer and in Mississippi individuals are required to wear hunter orange while hunting deer.[3] In contention, the defendants point out that hunter orange is not required while hunting squirrel and Officer Long could not have been certain whether the individual in the tree was hunting deer or hunting squirrel. Therefore, they maintain that Officer Long did not have probable cause to enter the Cupit land without a search warrant. However, Officer Long indicated that in his fifteen years of experience he had never known anyone to hunt squirrels from a tree stand. In addition, Officer Long had information that individuals were hunting over bait on the Cupit property. Accordingly, it is highly unlikely that an individual would be hunting squirrel from a tree stand with corn poured out over the ground. Thus, it was reasonable for Officer Long to believe that the individual was hunting deer without wearing hunter orange. Consequently, Officer Long had probable cause to believe that a crime was occurring in his presence and further had the right to enter onto Cupit's land without a search warrant. The trial court's finding "that the personal observations of Officer Ricky Long in seeing the individual deer hunting in a high tree stand, without the required hunter's orange, gave the officers probable cause to believe that hunting violations were being [sic] then and there being committed on the property in question, and the right to proceed onto the property and subsequently write the citations against the defendants" was fully supported by the evidence contained in the record. The fact that the officers recovered a high-powered rifle, and a 30-30 rifle, as well as a shotgun (twelve gauge and 30-30) loaded with buckshot from the hunters lends further support for the officer's reasonable belief that deer were being hunted rather than squirrel, and that other violations while hunting deer were occurring. Accordingly, the trial court's finding that the officers had probable cause to enter the Cupit property was not manifestly wrong and will not be overturned by this Court.

¶13. It should be noted that all of the cases the defendants cite in support of their contention of an illegal search are distinguishable from the case at bar. In all of the cases relied upon by the defendants, the game wardens or law enforcement officials' entry upon the defendant's land was not based upon their attempts to thwart the commission of a crime in progress. Instead, the officials entered the defendant's land without a search warrant to obtain evidence of illegal activity. In none of the cases cited by defendants had the officials actually observed a crime in progress. *Tucker v. State*, 128 Miss. 211, 90 So. 845 (1922) (constable searched defendant's house and land without a warrant and found whiskey and a still); *State v. Patterson*, 130 Miss. 680, 95 So. 96 (1923)[(4)] (officers took a bottle of whiskey from the defendant's person after hiding to apprehend owner of found jug of whiskey); *Owens v. State*, 133 Miss. 753, 98 So. 233 (1923) (officers obtained evidence of Owens' guilt by searching his land without a search warrant); *Falkner v. State*, 134 Miss. 253, 98 So. 691 (1924) (officers found still after entering defendant's property without a search warrant); *Helton v. State*, 136 Miss. 622, 101 So. 701 (1924) ( officers found two kegs of liquor after entering defendant's property without a search warrant); *Barnard v. State*, 155 Miss. 390, 124 So. 479 (1929) (officers found a still after entering property leased by the defendant without a search warrant); *Davis v. State*, 144 Miss. 551, 110 So. 447 (1926) (officers entered land defendant was using with the owner's permission without a search warrant); *Feazell v. State*, 217 Miss. 879, 65 So. 2d 267 (1953) (officers entered defendant's property without a search warrant and found whiskey); *Davidson v. State*, 240 So. 2d 463 (Miss. 1970) (officer entered defendant's property without a search warrant and found evidence of a stolen tractor); *Issacks v. State*, 350 So. 2d 1340 (Miss. 1977) (marijuana obtained from defendant's property based on search warrant later found to be void); *Joyce v. State*, 227 Miss. 854, 87 So. 2d 92 (1956) (officers entered defendant's land to obtain evidence of livestock theft); *Arnett v. State*, 532 So. 2d 1003 (Miss. 1988) (storm shed was within curtilage of defendant's house and thus within scope of search warrant).

¶14. The cases relied upon by the defendants are not controlling, since the case at bar is distinguishable from each of these cases. In the case at bar the trial court held that the officers did not trespass upon the land leased by the defendants because they observed a violation of law in progress before entering the defendants' land. This Court finds that the trail court's holding was not manifestly wrong, therefore, it will not be disturbed on appeal.

### II. DID THE TRIAL COURT ERR IN DENYING DEFENDANTS' MOTION TO SUPPRESS?

¶15. The defendants allege that the trial judge should have granted the motion to suppress "because what the game wardens saw was the result of an illegal search, [and] they should not have been allowed to testify as to what they saw after they violated defendant's constitutional and statutory rights." However, in discussing the previous issue it was determined that the defendants' constitutional rights were not violated and the game wardens' search was not illegal but was instead based upon probable cause. Therefore, the trial court was correct in denying the defendants' motion to suppress.

### III. DID THE TRIAL COURT ERR IN FAILING TO COMPEL THE GAME WARDENS TO IDENTIFY THEIR "CONFIDENTIAL INFORMANT"?

¶16. The defendants allege that the trial court should have required the conservation officers to

disclose the identity of their confidential informant since he "was an eyewitness to events giving rise to the charges against the defendants in this case." Additionally, the defendant's attorney maintained at trial that "[t]here's no such thing as a confidential informant in a misdemeanor case." Mississippi Uniform Circuit and County Court Rule 9.04(B)(2) addresses the requirement of disclosing informants.

> *Informants.* Disclosure of an informant's identity shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose his/her identity will infringe the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.

URCCC 9.04(B)(2). Additionally, Rule 6.01 indicates that Rule 9.04 is applicable to criminal proceedings and specifically defines a misdemeanor as a criminal offense punishable by a maximum possible sentence of confinement for one year or less, fine, or both. URCCC 6.01. Accordingly, there is no merit to Cupit's assertion that the rule regarding confidential informants does not apply to misdemeanors.

¶17. "The lead case in Mississippi on [informants] is *Read v. State*, 430 So. 2d 832, (Miss. 1983)." *Arnett v. State*, 532 So. 2d 1003, 1008 (Miss. 1988). In *Read*, this Court stated:

> The proper rule regarding the circumstances under which the identity of the informer should be disclosed was stated in *Young v. State*, 245 So. 2d 26 (Miss. 1971):
>
> Ordinarily, disclosure of the identity of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. *Strode v. State*, 231 So. 2d 779 (Miss. 1970). On the other hand, where the informer is an actual participant in the alleged crime, the accused is entitled to know who he is. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957) . . . . (245 So. 2d at 27). [*Mills v. State*, 304 So. 2d 651, 654 (Miss. 1974)].

*Read*, 430 So. 2d at 835-36. In *Arnett*, this Court found that the trial court did not commit error by withholding the informant's identity since "[t]here [was] no evidence in the record that the informant was a participant or an eyewitness to the crime, and consequently disclosure of the witness was within the sound discretion of the trial judge." *Arnett*, 532 So. 2d at 1008 (*citing Swindle v. State*, 502 So. 2d 652, 658 (1987); *Daniels v. State*, 422 So. 2d 289 (Miss. 1982); *Young v. State*, 245 So. 2d 26 (Miss. 1971)). Likewise, in the case at bar, there is no evidence in the record that the informant participated in the crime or was an eyewitness to the crime. The trial judge specifically found "that officer Ricky Long had probable cause **based upon his personal observations** on the date and location in question, **without regard to any information provided officers by any confidential informant**." Therefore, the trial judge's decision to deny the defendant's motion to require disclosure of the confidential informant's identity was not manifestly wrong.

¶18. Furthermore, the defendant's attorney obviously had information that the confidential informant was Luther Whittington and had subpoenaed Whittington to testify. However, the defense failed to call Mr. Whittington as a witness.[5] This Court previously noted that "confrontation and cross-examination are the very rights which require disclosure of material witnesses in the first place."

*Fleming v. State*, 604 So. 2d 280, 298 (Miss. 1992) (*citing **Ward v. State***, 293 So. 2d 419, 421 (Miss. 1974)); *See also* [Miss. R. App. P. 10(b)(1)](). Defense counsel had an opportunity to confront and cross-exam whom he believed to be the confidential informant but failed to take advantage of this opportunity, or in the alternative failed to designate information relevant to this issue as part of the record necessary for appeal. Consequently, defense counsel has waived his right to claim this as error.

¶19. We hold that the trial court did not abuse its discretion in denying the defendants' motion to compel disclosure of the confidential informant's identity.

## V. IS MISS. CODE ANN. § 49-7-33 (1972) UNCONSTITUTIONAL?

¶20. The defendants argue the first impression issue that Miss. Code Ann. § 49-7-33 "is unconstitutional because . . . it is vague and enforcement is left to the discretion of the individual game warden." Specifically, the defendants contend that the statute does not provide adequate notice of the definition of "bait." They point out that since it is not a violation of the statute to plant crops such as ryegrass, chufa, winter wheat, and corn and hunt over it, it is inconsistent to say that it is a violation of statute to pour shelled corn over the ground and hunt over it.

¶21. The State contends that defendants have not proven that the statute is unconstitutionally vague or overbroad beyond a reasonable doubt. "Statutes under constitutional attack have a presumption of validity attached to them, overcome only with a showing of unconstitutionality beyond a reasonable doubt." *Nicholson v. State*, 672 So. 2d 744, 750 (Miss. 1996) (*citing **Vance v. Lincoln County Dep't of Pub. Welfare***, 582 So. 2d 414, 419 (Miss. 1991)).

> This Court has made clear that a strong case must be presented in arguing against the constitutionality of legislative enactments:
>
> With regard to the duties cast upon the assailant of a legislative enactment, the rule is fixed that a party who alleges the unconstitutionality of a statute has the burden of substantiating his claim and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped its power or has violated the Constitution must affirmatively and clearly establish his position.

*Touart v. Johnston*, 656 So. 2d 318, 321 (Miss. 1995) (*quoting **Van Slyke v. Bd. of Trustees***, 613 So. 2d 872, 880 (Miss. 1993) (*citing* 11 Am. Jur., Constitutional Laws § 132 (1937))). Furthermore, this Court addressed the contours of the vagueness doctrine in *Meeks v. Tallahatchie County*, 513 So. 2d 563 (Miss. 1987).

> *Meeks* recognized that languages are inherently ambiguous and what is important is whether the ordinary person of common intelligence understands what is allowed and not allowed. *Meeks*, 513 So. 2d at 567. *Meeks* relied on the United States Supreme Court:
>
> [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process.

*City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So. 2d 742, 747 (Miss. 1996) (*quoting Meeks*, 513 So. 2d at 566). It is hard to imagine that a person of common intelligence would not know that a four foot circle of shelled corn poured out onto the ground would constitute "bait." The defendant's argument that the statute is vague because it allows hunting over "planted" ryegrass, winter wheat, chufa, and corn does not lend credence to his position. Rather, it shows that the definition of "bait" is differentiated so that the ordinary person would be put on notice. If the defendants had planted corn and were hunting over it, then they might be able to claim insufficient notice. The planting of agricultural products is a natural process that involves clearing land, cultivating the soil, applying various fertilizer, lime, etc., and tending to the crops during growth. A common sense reading of the statute would dictate that this natural planting procedure would not be considered "bait." Therefore, for such procedure to also be considered a violation of the statute, the legislature would need to include language in the statue specifying that the natural procedure of planting crops is also considered "bait."

¶22. The planting of crops is a natural agricultural process that cannot be accomplished in wooded areas inhabited by deer and other animals. Rather, it must be done in an area cleared of trees and brush where deer and other animals must then come to the natural growth and rummage through the stalks, leaves, grass and earth, etc., in order to find the natural growing food product. However, a bag of "shelled corn," as in the case at bar, can be taken directly to densely wooded areas, (where natural agricultural crops could not possibly be grown), poured out in a large pile in the animals' natural habitat, and thereby effectively entice the deer to a particular spot where the animal might not have elected to go, but for the "bait." During his testimony, Officer Long pointed out that crops and grasses that are "planted" involves a normal agricultural process which is there seven days a week, twenty-four hours a day. However, it has been proven that you can carry corn and certain feeds to an area on a particular timed basis and lure deer into a certain area at a certain time period which makes it unfair to the game to hunt over it. There's clearly a big distinction between "planting" naturally growing crops where the deer come to, rummage through and feed on their schedule and "baiting" by piling up a "four foot circle of corn," or other feed, where the deer come to feed on your schedule. Such latter procedure can be likened to an alarm clock ringing, signaling the time to do a particular chosen endeavor. The Corrys might as well have been ringing the dinner bell.

¶23. The statute prohibits an activity that common sensibly constitutes "baiting" and therefore, is not so vague as to be unconstitutional. Simply put, and as the trial court so ruled, the Corrys have not proven that the statute is unconstitutionally vague or overbroad beyond a reasonable doubt and there is no merit to defendants' argument that they were not sufficiently aware that pouring a four foot circle of shelled corn over the ground would constitute "bait." We hold that the Corrys have failed to overcome the statute's presumption of validity by showing its unconstitutionality beyond a reasonable doubt. Therefore, the trial court's decision that § 49-7-33 is constitutional is affirmed.

## CONCLUSION

¶24. The defendant's contention that the conservation officers performed an illegal search is without merit. The trial judge held that Officer Long had probable cause to enter Cupit's land based on his personal observations of a crime being committed in his presence. The Corrys advance a rather novel argument, that they could have been squirrel hunting from tree stands, thus hunter orange was not required to be worn. Therefore, they argue that the conservation officers were without probable

cause to believe that they were hunting deer over bait. The justice court and circuit court of Amite County was not convinced. This Court is likewise unimpressed. Though definitely original, this argument stretches common sense as well as the imagination. As Officer Long testified, in fifteen years of experience, he had never heard of anyone squirrel hunting from a tree stand. Equally unconvincing is the four foot wide pile of shelled corn which apparently the Corrys would have this Court believe was strategically placed thirty yards in front of 15-20 foot high tree stands in order to entice squirrels to the gun, rather than deer. Finally, when we consider the Corry's choice of caliber of weapon used to hunt these squirrels, their argument is even less compelling. Officer Foreman testified concerning the caliber of weapons used that, "One was a twelve gauge shotgun. . . .with buckshot;" another was, "I think a lever action 30-30;" and the third weapon, "It was a high-powered rifle used for taking deer." Were these weapons used in the harvesting of squirrels? We don't think so. To conclude otherwise one must presume that those big Amite County squirrels must be extremely difficult to harvest, so much so that buckshot and high power rifles were required. Common sense dictates only one conclusion. The Corrys were deer hunting from tree stands, without wearing hunting orange, and David Corry was deer hunting over "bait".

¶25. The defendants argued that Miss. Code Ann. § 49-7-33 is unconstitutionally vague because it does not provide adequate notice of the definition of "bait." In the case at bar, one of the defendants was found hunting over a four foot circle of shelled corn poured out on the ground. It is hard to imagine that a person of common intelligence would not know that a four foot circle of shelled corn poured out onto the ground in the deer's natural forested habitat would constitute "bait." The defendants' argument that it is not illegal to hunt over planted grasses and crops does not lend credence to their argument that the statute is vague. Rather this argument shows that the definition of "bait" is differentiated so that the ordinary person using common sense and knowing the widely accepted meaning of the word "bait" would be put on notice. Therefore, this Court upholds the trial court's finding that § 49-7-33 is constitutional.

¶26. Consequently, we hold that the trial court's ruling that the officers' actions did not violate Article 3, Sections 23 and 26 of the Mississippi Constitution and the Fourth and Fifth amendments to the United States Constitution was not manifestly wrong and will not be overturned. Furthermore, since it was determined that the conservation officers' actions did not violate the defendants' constitutional rights, we further find that the trial court was correct in denying the defendants' motion to suppress. The defendants allege that the trial court should have required the conservation officers to disclose the identity of their confidential informant. However, there was no evidence in the record to indicate that the confidential informant in the case at bar participated in the crime or was an eyewitness to the crime. Therefore, this Court finds that the trial judge was correct in denying the defendants' motion to require disclosure of the confidential informant's identity. Moreover, the Corry's attorney either failed to take advantage of the opportunity to confront and cross-exam whom they believed to be the confidential informant, or failed to designate information relevant to this issue as part of the record necessary for appeal. Therefore, we hold that he waived his right to claim this as error.

¶27. Accordingly, the trial court's decision is affirmed.

¶28. **AS TO DAVID B. CORRY: CONVICTION OF HUNTING DEER WITHOUT ORANGE, HUNTING OVER BAIT AND HUNTING WITHOUT A VALID LICENSE AND PAYMENT OF $100.00 FINE ON EACH OFFENSE AFFIRMED. AS TO PAUL J. CORRY:**

**HUNTING DEER WITHOUT ORANGE AND HUNTING WITHOUT A VALID LICENSE AND PAYMENT OF $100.00 FINE ON EACH OFFENSE AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶29. ` I respectfully dissent.

¶30. Initially, the majority errs in concluding that the trial court should not have compelled the game wardens to identify their confidential informant. Although the majority states that there is no evidence that the informant was an eyewitness to the crime, the majority clearly notes in its statement of the facts that the informant provided the officers information regarding alleged hunting violations. It can hardly be said that the confidential informant was not a witness to the guilt or innocence of the accused when Officers Foreman and Long went onto the property of Michael Cupit to investigate alleged hunting violations based on information received from the confidential source. But for the information from this source, the officers would never have been privy to identifying Paul or David Corry. Accordingly, both of the game wardens should have been ordered to disclose the confidential informant, regardless of any information that the defendant's attorney may have possessed about the informant's identity.

¶31. Secondly, the statement by Paul Corry that his brother was also hunting on the Cupit property did not give rise to probable cause. The officers, having found no corn around Paul, had no reason to suspect that Paul Corry was hunting deer as opposed to hunting squirrel. Further, the officers had no reason to suspect that David Corry was guilty of hunting violations. David Corry was not in view of the officers, so they could not have suspected that any illegal act was taking place. Since the officers could not have observed a violation of the law in their presence, they had no authority to enter the land, make warrantless arrests, and conduct searches. The defendants' motion to suppress should have been granted.

¶32. It is for these reasons that I dissent.

1. Michael Cupit is the owner of the land the defendants leased for hunting and is also the defendant's attorney in this action.

2. Officer Foreman also located another individual who was also charged with hunting violations, however, that individual was not included in this appeal.

3. When the defendant was charged in November 1995, the requirement of wearing hunter orange while deer hunting was accomplished through Public Notice 2384. This requirement has since been codified in Miss. Code Ann. § 49-7-31.

4. In this case the circuit court noted that "it would not be unreasonable to search a man actually engaged in the violation of law" but that they must "sustain the motion to quash [the indictment based] on the authority of *Tucker v. State*." *Patterson*, 130 Miss. at 682, 95 So. at 97. This Court agreed with the circuit court and followed *Tucker* in quashing Patterson's indictment. Although this Court has not officially pronounced this case as overruled, Mississippi statute and case law now gives law enforcement the authority to search a man actually engaged in the violation of law.

5. In the appellant's brief, Attorney Cupit affirmed to this Court that, although it is not part of the record, Luther Whittington *was* called as a witness, and that Whittington denied being the confidential informant under oath on the witness stand. This affirmation is of no consequence to this Court since we are limited to a review of the documents contained in the record. "This Court has repeatedly held that '[t]his Court will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record.'" *Medina v. State*, 688 So. 2d 727, 732 (Miss. 1996) (*quoting* *Robinson v. State*, 662 So. 2d 1100, 1104 (Miss. 1995)). "Moreover, we cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Medina*, 688 So. 2d at 732 (citations omitted). Additionally, "the appellant bears the burden of presenting a record which is sufficient to undergird his assignments of error." *Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988).