467 So.2d 940 (1985)
Jerry McCommon
v.
STATE of Mississippi.
No. 55240.
Supreme Court of Mississippi.
April 24, 1985.
Rehearing Denied May 15, 1985.
Samuel H. Wilkins, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Carolyn B. Mills, Special Asst. Atty. Gen., Jackson, for appellee.
En Banc.
*941 DAN M. LEE, Justice, for the Court:
Jerry McCommon stands convicted of being a rather uncommon carrier. A jury in the Circuit Court of Simpson County found him guilty of knowingly possessing more than one kilogram of marijuana. The marijuana was discovered in the trunk of McCommon's car after law enforcement officers, acting on a tip from a confidential informer, followed McCommon to Miami, Florida and back to Simpson County.
After McCommon was detained officers asked him where he had been. He told them that he had been on the Mississippi Gulf Coast camping. Knowing this to be a lie, and having other indicia of probable cause, two of the officers left the scene to secure a search warrant for McCommon's vehicle. McCommon was taken into custody and his vehicle was taken to the Simpson County courthouse. After a search warrant had been secured, McCommon's trunk was opened and four bales of marijuana were found therein. Following his conviction and sentence to a term of 15 years in the custody of the Mississippi Department of Corrections, with the last five years being on supervised parole, and a fine of $20,000, McCommon brings this appeal. McCommon's sole assignment of error relates to the search and seizure of his automobile. We affirm.

PROBABLE CAUSE
In Lee v. State, 435 So.2d 674 (Miss. 1983), this Court adopted the totality of the circumstances test for determining the existence of probable cause which was articulated by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That test has subsequently been followed in Hall v. State, 455 So.2d 1303 (Miss. 1984) and Stringer v. State (Miss. No. 54,805, decided February 27, 1985, not yet reported). As Stringer makes clear, the totality of the circumstances test applies whether we are construing the probable cause requirement of Section 23, Art. 3 of the Mississippi Constitution or that found in the Fourth Amendment to the Constitution of the United States.
Under the totality of the circumstances test "[T]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place and the duty of a reviewing court is simply to insure that the magistrate had a substantial basis for... conclud-[ing] that probable cause existed." Lee at 676 and Stringer, slip at 8, quoting Gates at 462 U.S. 238, 103 S.Ct. 2332, 76 L.Ed.2d 548.
We are asked to decide whether, under the totality of the circumstances, the justice court judge who issued the search warrant to search McCommon's vehicle was correct in deciding that the state had probable cause to believe that "contraband or evidence of a crime" would be found in Jerry McCommon's car. By simply reviewing the affidavit and the warrant on their face, the following facts support the state's assertion that probable cause was present. (1) In May, 1982, McCommon had been arrested for possession of cocaine. The search of his vehicle revealed a large amount of marijuana debris. (2) Information from a confidential source revealed that McCommon was driving to Miami, Florida and returning with large amounts of marijuana in his vehicle. (3) On July 13, 1982, two associates of McCommon were arrested for possession of approximately 500 pounds of marijuana. One of the vehicles containing the marijuana belonged to McCommon. One of these associates had been in Miami, Florida at the same time as Jerry McCommon. (4) A confidential source told Sgt. Barrett of the Jackson Police Department, that McCommon was going to Miami, Florida "possibly to pick up a load of drugs." McCommon was followed to Florida and observed at a residence occupied by a person known to the United States Drug Enforcement Administration *942 as a marine smuggler. When McCommon returned to Mississippi his vehicle was sagging in the rear although it had not done so on the trip to Florida. (5) When McCommon was stopped and questioned by authorities he told them that he had been on the Mississippi Gulf Coast camping, a statement known by police officers to be untrue. Given all of these circumstances, we conclude that there was probable cause to issue the search warrant.

WAS THE WARRANT ISSUED BY A NEUTRAL AND DETACHED MAGISTRATE?
McCommon here argues that the issuing magistrate, Justice Court Judge Nevel Mangum, was not a neutral and detached magistrate. Both the United States Supreme Court and this Court have held that the individual issuing the warrant must be a neutral and detached magistrate. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Birchfield v. State, 412 So.2d 1181 (Miss. 1982). A magistrate who fails to perform his neutral and detached function and who serves "merely as a rubber stamp for the police" cannot validly issue a search warrant. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).
Judge Mangum was called as a witness for the state during the suppression hearing in this cause. On cross-examination by the defense attorney, Judge Mangum testified that he relied primarily on the fact that the people who requested the warrant were sworn police officers rather than anything in particular in the affidavit of underlying facts and circumstances. Judge Mangum did add however, "Well, if I didn't feel like it was warranted, now, then, naturally, I wouldn't issue it."
McCommon asserts that the judge's testimony that he primarily relied on the fact that sworn police officers were asking for the warrant is evidence that he was not a neutral and detached magistrate. We disagree. Judge Mangum's testimony that he would not have issued the warrant had he not thought it appropriate is evidence that he was not serving "merely as a rubber stamp for the police." We therefore find no merit in McCommon's argument; however, it is appropriate that we add a comment here for the benefit of both the bar and those state officials in whom resides the duty of issuing search warrants.
The importance of the neutral and detached magistrate cannot be over emphasized. That magistrate stands as the barrier against unwarranted intrusions into the private lives and personal effects of the people. As the United States Supreme Court said in Coolidge v. New Hampshire, 403 U.S. 443, 481, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564, 569 (1971):
[T]he warrant requirement has been a valued part of our constitutional law for decades, and it has determined the result in scores and scores of cases in courts all over this country. It is not an inconvenience to be somehow `weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the `well-intentioned but mistakenly overzealous executive officers' who are a part of any system of law enforcement.
We realize that the task of a magistrate who issues search warrants is not an easy one. Their role requires detachment and study as they consider whether they have been presented with sufficient probable cause to issue a warrant to search or seize a particular person, place or thing. We fully appreciate the gravity of that role and are optimistic that those vested with that responsibility do likewise. The justice court judges, police judges and other judicial officers of the state called upon to issue warrants must remember that they are judges. On their oaths they may not issue warrants just to help law enforcement. They must always remember that a request for a warrant requires a judicial determination. Impartiality and reasoned application of legal principles are the foundation of a judicial determination.

*943 WAS IT ERROR TO ALLOW THE STATE TO AMEND ITS PROOF AND SUBSTITUTE A SIGNED COPY OF THE SEARCH WARRANT AND AFFIDAVIT AS OPPOSED TO THE UNSIGNED COPY ADMITTED DURING THE STATE'S CASE?
During the supression hearing the state introduced a copy of the affidavit for a search warrant which was presented to Justice Court Judge Mangum. Following the close of the state's case the defense moved for a directed verdict based on the fact that those copies did not contain Judge Mangum's signature or seal. On the day of trial, the court allowed the state to amend the affidavits for a search warrant so as to insert the original into the record which contained the judge's signature. The judge testified that he had signed those documents on October 6, 1982, the day they were issued.
In Powell v. State, 355 So.2d 1378 (Miss. 1978), this Court wrote:
The other proposition argued is that the search warrant was fatally defective because the Justice Court Judge failed to sign the jurat of the affidavit. We find no merit in this argument. Undisputed testimony shows that the affiant appeared before Judge Dale, who put him under oath and obtained the information contained in the underlying facts and circumstances of the affidavit. After giving that information to the judge under oath, Pickens signed the affidavit and Dale wrote the date and his title at the bottom. Pursuant to the affidavit, Dale then issued the search warrant for the residence rented by appellant. The search warrant bears Dale's signature, which by reference incorporates the content of the affidavit.
355 So.2d at 1380.
In the instant case the undisputed testimony also showed that the affiants were put under oath and Judge Mangum elicited the information which appeared in the affidavit from them. Under the authority of Powell we hold that no error occurred when the trial court allowed the state the opportunity to amend its proof and present the original jurat as opposed to the defective copy.
Based on all of the foregoing, we hereby affirm Jerry McCommon's conviction of possession of knowingly possessing more than one kilogram of marijuana.
AFFIRMED.
PATTERSON, C.J., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
ROY NOBLE LEE, P.J., concurs in part.
HAWKINS, J., and WALKER and ROY NOBLE LEE, P.JJ., specially concur.
ROBERTSON, J., concurs.
ROBERTSON, Justice, concurring:
I concur unreservedly that there was in fact and in law probable cause sufficient to require issuance of the search warrant in this case, that Jerry McCommon's assignment of error predicated upon the admission of evidence discovered in the search is without merit, and that in the final analysis McCommon's conviction and sentence must be affirmed. I write separately because, in the course of his testimony regarding the issuance of the search warrant, Justice Court Judge Nevel Mangum displayed an attitude which could hardly be described as judicial. It is an example that ought to be explicated, to the end that others might profit.
The majority correctly points out that Judge Mangum testified that in his view the search warrant was justified under the evidence. Judge Mangum concluded, "Well, if I didn't feel like it [issuance of the search warrant] was warranted, now, then, naturally, I wouldn't issue it." Notwithstanding, prior to this point Judge Mangum offered comments which unmask a no doubt bona fide belief that his office is an adjunct of law enforcement and that a major criterion for issuance of the search warrant should be that it was requested by law enforcement authorities.
*944 Consider the following colloquy between Judge Mangum and counsel for McCommon.
Q. You would have issued it [the search warrant] anyhow?
A. Certainly, because the officer  you've got to have enough faith and confidence in the officer that's asking for the search warrant to warrant it for him and then if it proves it's invalid, well, or whatever, there's nothing there what they're hunting  that's not the first time I ever made a search warrant.
Q. So, you were relying on the fact that these officers were of the law 
A. Of the law sworn 
Q.  and they were in there  they were sworn officers 
A. That's right.
Q.  they were in there telling you that this fellow was a drug dealer and they wanted to search his car 
A. That's exactly right.
Q.  and you relied on that rather than any particulars of this thing?
A. That's exactly right.
Q. Had you ever seen these officers before?
A. No, sir.
Q. You had never seen them before?
A. Not to know that they were drug officers.
Q. All right.
A. No, sir.
Q. So, you really issued the search warrant because you were asked for it by the officers of law rather than any particular thing they told you?
A. Well, I based my decision not primarily on that, but because  if Sheriff Jones walked in there and said, "Judge, I need a search warrant to search John Doe for Marijuana," drugs or whatever  liquor or whatever it might be, I'm going to go on his word because he's  I take him to be an honest law enforcement officer and he needs help to get in to search these places and it's my duty to help him to fulfill that.
Q. Okay. And it's really based on that request other than any particular thing he might tell you?
A. That's right. That's right.
Q. And that's what the situation was here?
A. Well, if I didn't feel like it was warranted, now, then, naturally, I wouldn't issue it.
Q. Okay, but it was pretty  it was  the swaying fact was that this was two sworn officers of the law rather than anything they told you in these Underlying Facts and Circumstances?
A. That's right. They were officers of the Narcotics.
I wish to state in language clear and unequivocal that I for one regard the attitude displayed by Judge Mangum in this case as wholly out of line. It is inconsistent with the judicial character of the office Judge Mangum holds. On his oath, Judge Mangum and the other justice court judges of the state are not mere adjuncts of law enforcement. They are judges, sworn to act like judges.
Detachment and neutrality are the essence of judicial behavior. In each case within his or her jurisdiction, the judge is required to find the facts fairly and impartially, to identify the applicable rule of law by reference to his education, training and experience, and finally to apply the rule to the facts and achieve a result. This we call an adjudication. These things each judge  including justice court judges  must do without fear or favor, letting the chips fall where they may.
There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens (including law enforcement officers) have their primary, if not only, direct contact with the law through the office of the justice court judge. See In Re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss. 1985). The preception of justice of most of our citizens is forged out of their experiences with our justice court judges. If our justice court judges do not behave with judicial temperament *945 and perform their duties by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the judicial process.
Second, in the context of this case, it is the justice court judge who has the front line responsibility for translating into a living and breathing reality the right of citizens to be secure from unreasonable search and seizures and from issuance of search warrants except upon probable cause. These are rights secured by the Fourth Amendment to the Constitution of the United States and by Article 3, Section 23 of the Mississippi Constitution of 1890. As such they are fundamental rights. Our people will little understand or enjoy these rights except they be respected by our justice court judges. As a practical matter, no exclusionary rule or other remedial device can secure vindication of Fourth Amendment/Section 23 rights as effectively and efficiently may the justice court judges of this state, if they will only do their duty.
Finally, the application for a search warrant is one of the few instances in our judicial system where judges are authorized to make adjudications without hearing from the party affected. Application for a search warrant is made by a law enforcement officer under circumstances where it is wholly impracticable to afford the party to be searched an opportunity to present his case to the effect that there may be no probable cause. Because of the ex parte nature of the proceedings, it is all the more important that our justice court judges do their duty consistent with the three steps of the process of adjudication described above.
I am not so much concerned about this case as I am those others where the evidence in support of issuance of the warrant may be more meager. The facts in this case have been adequately detailed in the opinion of Justice Dan M. Lee. The applicable rule of law is the totality of the circumstances definition of probable cause currently in vogue. When that rule is applied to the facts, the conclusion is inescapable that there was probable cause for the issuance of the warrant. For this reason, I concur.
The bigger question is whether the time is approaching when we will begin to insist that our justice court judges be just that  judges. Some say this is unrealistic, that our judges for the most part have no formal training in the law. No doubt these public servants are at a disadvantage.
Little expertise in the law is required for one to know that the title "judge" connotes neutrality and impartiality. A high school civics student knows that a judge by the nature of his office may not act out of favoritism or partiality toward one party or the other. Whatever prerogative other public officials may have to help one interest group or another, detachment is demanded of our judges.
When a person assumes the office of justice court judge in this state, he or she surrenders the right to favor law enforcement officials, those criminally accused, collection agencies, or anyone else. When such a person takes the oath of office, he or she yields the prerogative of executing the responsibilities of the office on any basis other than the fair and impartial application of the law to the facts. The preservation of the rule of law as our last best hope for the just ordering of our society requires nothing less than an insistence by this Court that our justice court judges be in fact what they are in name: judges.
DAN M. LEE and SULLIVAN, JJ., join in this opinion.
HAWKINS, Justice, specially concurring:
I concur in the results reached in this case.
When the validity of a search is at issue, Courts have an obligation to make a scrupulous examination of the underlying facts and circumstances surrounding the search to determine:
(1) the affidavit and warrant on their face comply with our statutes and our Constitution;
(2) the officers had probable cause to support the affidavit;

*946 (3) the issuing magistrate was furnished with sufficient facts by the officers to constitute probable cause;
(4) the magistrate occupied an officially neutral and detached position from that of the law enforcement officers.
It is also my view that the Constitution does not require a reviewing court to probe the state of mind of every magistrate who issues a search warrant, and the majority opinion should so state.
In this case it is abundantly clear that the officers had probable cause to make the affidavit, and that the magistrate was furnished with facts constituting probable cause. Furthermore, he held an officially neutral and detached position from the officers.
Neither the circuit judge nor we are required to go further.
WALKER and ROY NOBLE LEE, P.JJ., join this opinion.