532 So.2d 1003 (1988)
Joseph Junior ARNETT
v.
STATE of Mississippi.
No. 57920.
Supreme Court of Mississippi.
September 21, 1988.
*1004 Thomas E. Royals, Robert R. Williard, Royals, Hartung & Davis, Barney E. Eaton, III, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and GRIFFIN and ZUCCARO, JJ.
HAWKINS, Presiding Justice, for the Court:
This is an appeal from the circuit court of the Second Judicial District of Jasper County regarding the conviction of Joseph Junior Arnett (Arnett) on a charge of possession of marijuana in an amount greater *1005 than a kilogram, and sentence to 14 years in the Mississippi State Penitentiary with seven years suspended if Arnett paid a $125,000 fine. Arnett's parole eligibility and/or participation in any or all other early release programs are conditioned on the payment of the fine. Arnett assigns six assignments of error:
I. THAT THE TRIAL COURT ERRED IN REFUSING TO ORDER THE STATE TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT.
II. THAT THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS PROBABLE CAUSE FOR THE ISSUANCE OF THE SEARCH WARRANT.
III. THAT THE SEARCH OF THE SHED CONSTITUTED AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION OF 1890.
IV. THAT THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF THE 270 DAY RULE.
V. THAT THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
VI. THAT THE JUDGMENT OF THE COURT IS ILLEGAL AND VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
We are not persuaded as to any of his assignments, and affirm. The cause is remanded, however, for proper sentencing.

FACTS
On the night of October 15, 1984, between 9:00 and 9:30 p.m., Lt. Charles M. Tyson (Tyson) of the Mississippi Bureau of Narcotics (MBN), Hattiesburg Division, received a call from a confidential informant stating that marijuana was then on the property of Joseph Junior Arnett. This property is located in the Second Judicial District of Jasper County. Information had been received from informants for approximately three weeks prior to the October 15 telephone call stating that Arnett was smuggling marijuana into the United States. This information was being received by both Tyson and by Agent Sammy Ray Evans (Evans), also of the MBN. Information was being received by more than one informant. During the telephone call in question, the informant stated to Tyson that two males had arrived at the Arnett residence in a green Custom 10 Chevrolet pickup with a camper shell covering bearing an Indiana license tag number 8248X1, and further that the marijuana was in green and white garbage bags inside the camper shell. The informant also stated that the outbuildings and a Chevrolet El Camino parked on the property were possibly being used for storage of marijuana. Finally, the informant stated that he had heard Arnett bragging about smuggling marijuana into the United States and that he had personally witnessed the marijuana on the property. The informant never told Tyson under what circumstances he was able to see the marijuana. In the early morning hours of October 16, 1984, Tyson and Evans went before Justice Court Judge Mark Ishee and, based on the information received from the confidential informant, whom Tyson, from past experience, believed to be reliable, obtained a search warrant for the property and appurtenances thereto. The search warrant described the location of Arnett's residence in Jasper County, and added the following sentence: "This is to include any and all vehicles and the curtilage of the residence." Tyson stated that while obtaining the Search warrant, he and Evans "discussed the whole thing" with Judge Ishee, but that everything discussed was stated in the Underlying Facts and Circumstances. This search was carried out at 2:28 a.m. October 16, 1984. Present were Tyson, Evans, Agent Lt. Earl Pierce (Pierce) and Agent Robert *1006 Alexander (Alexander) (both of MBN), Sheriff Tom Green and Deputies Ken Breland and Randy Graham. When these men arrived at Arnett's house, Tyson and Evans knocked and announced themselves. Arnett answered the door and let the men enter. Immediately a search was made for others inside the house. Found were Delores Margarita Arnett (Arnett's wife), Darryl Ray Tolson (Tolson), and Herbert Dale Patrick (Patrick) (owner of the Chevy truck). All four people were seated by the agents at the kitchen table while a complete search was conducted of the house, the out-buildings (consisting of a storm shelter and barn), the Chevrolet pickup (located beside the storm shelter) and Tolson's El Camino parked beside the house. Tyson noticed a bag sticking out from behind the seat of the El Camino and upon investigation discovered two large garbage bags containing several smaller bags of green leafy substance, later identified as marijuana. Agents Alexander and Pierce found a large quantity of marijuana in the storm shed, which had been unlocked but propped shut, and residue in the back of the Chevrolet pickup. This search yielded over 600 pounds of marijuana. Only 6.94 grams of marijuana, however, was found inside Arnett's house in the dishwasher. Following this search, Arnett, Delores, Tolson and Patrick were arrested and charged with possession of marijuana in an amount greater than a kilogram with intent to distribute. At Arnett's trial, his charge was reduced to possession of marijuana in an amount greater than a kilogram.
Arnett's land was located on 54 acres in Jasper County. The house, storm shed (or shelter) and pasture located on the land were all to the south of the driveway leading to Arnett's residence. To get to Arnett's house, the officers turned off the highway and traveled approximately 100 to 150 yards along a driveway running east and west, at which point the driveway had two turnoffs to the south, the first to the storm shed, and the last, or Easternmost, to the residence. The storm shed was, by different approximations, 40 yards or 100 to 175 feet west of the house. Between the house and the shed there was a drop-off in the land forming a hill and the shed was built into this hill. Also, some trees were growing on the level land between the house and the drop-off.
A pasture was located in front and West of the house and shed towards the highway, and was enclosed by a fence which followed along the driveway. The pasture fence on the East cornered with another fence which ran East behind the shed and residence.
A lengthy delay ensued before Arnett was brought to trial. Arnett was indicted on January 11, 1985, and arraigned and pled not guilty on February 25, 1985. During the pretrial hearings and trial confusion reigned with neither the defense nor the prosecution agreeing on results of earlier hearings. The following is an overview of all pertinent dates:
Fri. 3-01-85 The defendant brought a motion to suppress illegally obtained evidence stating that:
1. No probable cause existed for the search warrant;
2. The search warrant affidavit was invalid because the identity of the informant was not given; and
3. The storm shed was outside the curtilage of the home making it unsusceptible to a valid search.
Judge L.D. Pittman overruled the motion and specifically relied upon Read v. State, 430 So.2d 832 (Miss. 1983), to find that the State was not required to identify this informant. (See Read, infra)
3-06-85 The court granted defendant's motion for a continuance until 5-20-85, stating that certain laboratory analyses, specifically fingerprints taken at the Arnett residence on the morning of 10-16-84, were not at that time complete or available to either the prosecution or the defendant.
3-07-85 The order granting the continuance until 5-20-85 was entered nunc pro tunc.
5-20-85 An unsigned motion for continuance was filed by the defendant. In this motion the defense attorney stated *1007 that it had been his understanding that the above-mentioned fingerprint analyses were to have been given to him on or before 4-01-85, but were not received until after that date, and therefore he assumed that the case had been continued until the August, 1985, term.
Hon. William B. Sullivan, the defense attorney, later stated that he had no knowledge of how this unsigned motion found its way into the appeal record, and that he could only imagine that he had mistakenly left this motion behind and a clerk found and filed it for him out of courtesy.
Also during this hearing, Judge L.D. Pittman required both attorneys to acknowledge each piece of discovery then in their possession.
The Arnett case was reset for the August term although the record is not clear as to the reason for this continuance. During a hearing on Motion to Dismiss for violation of the 270-day rule held on February 25-26, 1986, the defendant argued that the case was forced to be continued due to dilatory actions of the State in not delivering all discovery materials  specifically the fingerprint analyses  to the defense in time. The record discloses, however, that it was the defense who requested on 5-20-85 to be given time to take depositions of certain members of the Mississippi Crime Laboratory. The State argued that although the defendant's motion for a continuance on May 20 was unsigned and therefore defective, this motion was made ore tenus and was granted, thereby attributing the continuance to the defendant and consequently tolling the 270-day statute.
Mon. 8-26-85 Hon. Rusty Armstrong from New Orleans, LA, entered the case for the defendant as an associate with Hon. William B. Sullivan. Because Arnett was then incarcerated in the West Palm Beach County Stockade in Florida, the case was moved to the heel of the docket.
Fri. 8-30-85 Hon. L.D. Pittman informed Mr. Sullivan that he was to be ready to proceed with the Arnett case the following Thursday, regardless of whether Mr. Armstrong was able to be present due to his recent illness.
Tues. 2-18-86 There is nothing in the record of a trial being held between the 8-30-85 hearing and this date. On this date defense filed a motion to dismiss for violation of the 270-day rule.
Tues. 2-25-85 thru Wed. 2-26-85 A hearing was held on the motion to dismiss before Hon. Robert H. McFarland with each attorney stating what he believed to be the results and effects of prior hearings.
Thurs. 2-27-85 The motion to dismiss was overruled.
Mon. 3-03-86 The trial against Joseph Junior Arnett was commenced.
Tues. 3-04-85 The jury found Arnett guilty of possession of marijuana in an amount greater than a kilogram. Thereafter, Circuit Judge Robert H. McFarland sentenced Arnett to 14 years in the State Penitentiary with 7 years to be suspended if Arnett paid a fine of $125,000. Judgment further conditioned any parole eligibility and/or participation in any early release program on the payment of this fine.

LAW

I. DID THE TRIAL COURT ERR IN REFUSING TO ORDER THE STATE TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT?
Arnett argues that the identity of the confidential informant should have been made known to him because the confidential informant, by virtue of detailing specific information to the agents of the MBN, must have been or pretended to have been a participant in the crime. Under Rule 4.06(b)(2) of the Mississippi Uniform Rules of Circuit Court Practice, the identity of an informant is required to be divulged where the confidential informant is a material eyewitness to or participant in the crime. In pertinent part, the rule states:

Informants. Disclosure of an informant's identity shall not be required unless *1008 the confidential informant is to be produced at a hearing or trial or a failure to disclose his identity will infringe the constitutional rights of the accused. Or unless the informant depicts himself as eyewitness to the event or events constituting the charge against defendant.
Miss.Rule Crim.Prac. 4.06(b)(2) (1987). See: Breckenridge v. State, 472 So.2d 373, 377 (Miss. 1985). The lead case in Mississippi on this point is Read v. State, 430 So.2d 832, (Miss. 1983). In Read, the Court ruled that although the informant personally saw the drugs at a residence and related such information to the police, but was not a participant in the crime, then disclosure of the identity is not required. Id. at 836. Arnett's argument that because the confidential informant was able to relate detailed information, he necessarily must have been a participant in the crime is without merit. There is no evidence in the record that the informant was a participant or an eyewitness to the crime, and consequently disclosure of the witness was within the sound discretion of the trial judge. See: Swindle v. State, 502 So.2d 652, 658 (1987); Daniels v. State, 422 So.2d 289 (Miss. 1982); Young v. State, 245 So.2d 26 (Miss. 1971). No error was committed in withholding the informant's identity.

II. DID THE TRIAL COURT ERR IN HOLDING THAT THERE WAS PROBABLE CAUSE FOR THE ISSUANCE OF THE SEARCH WARRANT?
There is no merit to this assignment. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Garvis v. State, 483 So.2d 312 (Miss. 1986); McCommon v. State, 467 So.2d 940 (Miss. 1985).

III. DID THE SEARCH OF THE SHED CONSTITUTE AN ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION OF 1890?
There is no mention in the record of for what purpose the storm shed was used. The record does state that the shed was not separated from the house by a fence, but instead that the fence separated the pasture from the house and shed. Arnett's contention is that because the shed was built into the hill, which was formed by the drop-off in the land, and because trees were growing on the level land between the house and the drop-off, then the shed was outside the curtilage of appellant's residence and consequently any contraband there was illegally searched and seized. The question then becomes: Was the shed within the curtilage of the house?
It has been stated that:
[T]he word "house," used in the Fourth Amendment, has been enlarged by the courts to include the curtilage, or ground and buildings immediately surrounding a dwelling, an area which was usually enclosed in former times; the reach of scope of this curtilage depends on the facts of any given case. When a substantial fence is erected to enclose the area around the dwelling and outbuildings habitually used and necessary and convenient for family purposes, such a fence ordinarily defines the curtilage, particularly in a rural area ... [T]he curtilage of a dwelling is a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment; it is the yard, garden or field which is near to and used in connection with the dwelling. Accordingly, a barn has been held to be within the curtilage of a house although it was 70 to 80 yards away and surrounded by a fence. [Emphasis added]
68 Am.Jur.2d Searches and Seizures, § 20 (1973). See also Brinlee v. State, 403 P.2d 253 (Okla. Crim. 1965); Walker v. United States, 225 F.2d 447 (5th Cir.1955).
The recent case of United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), addressed this issue. This case involved the search of a barn located on defendant's ranch property used as a drug manufacturing facility. Dunn, 107 S.Ct. at 1137. Officers had been tipped *1009 to this activity and consequently made a warrantless entry into the appellant's land for observation. Id. The officers did not enter the barn but obtained a search warrant for the ranch property based on the activity observed. Id. at 1138. A motion to suppress the evidence obtained from the property during the search was brought stating that the search had been based on information received through a warrantless entry. Id. This motion to suppress was upheld by the Court of Appeals. Id. The question then became whether or not the barn was included within the curtilage of the house, thereby placing it under the protection of the Fourth Amendment. Id. The Supreme Court held that the area surrounding the barn was not within the curtilage of the house and consequently was not protected by the privacy expectations in the Fourth Amendment. Id. at 1139. This was based on a four-factor test which the Court stated is not to be rigidly applied in all cases, but is to be used as an analytical tool in determining whether an area is so intimately tied to a home as to be within its curtilage. These four factors are as follows:
1. Proximity of the area claimed to be curtilaged to the home.
2. Whether the area is included within an enclosure surrounding the home.
3. The nature of the uses to which the area is put.
4. The steps taken by the resident to protect the area from observation by people passing by.
Appellant makes an argument converse to the one made in Dunn, supra. Arnett argues that the search warrant only empowered the officers to search the residence and that the storm shed was outside the curtilage of the residence. Consequently Arnett argues that any evidence seized in the shed was obtained illegally. Several state courts have held the term "curtilage" includes out-buildings in close vicinity to, and used in connection with, the residence. See State v. Waldschmidt, 740 P.2d 617 (Kan. App. 1987); State v. Fierg, 673 S.W.2d 855 (Mo. App. 1984); Luman v. Oklahoma, 629 P.2d 1275 (Okla. Crim. 1981). We conclude that the storm shed was within the curtilage of Arnett's residence. First, the shed was approximately 150-175 feet from the house; second, the building was a storm shed  a type of building used in connection with a residence; third, there were but a few trees separating the house and shed; and fourth, and most important, the house and shed were on the same side of the fence and not separated by it. For more detailed definitions of the "curtilage" to a residence, see: United States v. Baldwin, 691 F.2d 718 (5th Cir.1982); United States v. Williams, 581 F.2d 451 (5th Cir.1978). See also: 25 C.J.S. Curtilage, at 82 (1966).
Having concluded that the fruits of this search all came from within the curtilage of Arnett's residence, we need not address his contention that even though not within the curtilage, he still had "an expectation of privacy" as to the contents of the shed.
As observed by Justice Holmes in Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924):
The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects," is not extended to the open fields. The distinction between the latter and the house is as old as the common law.
Until Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), all our cases involving challenges to searches and seizures were interpreted under Article 3, § 23 of our Mississippi Constitution:
Section 23. The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating *1010 the place to be searched and the persons or thing to be seized.[1] [Emphasis added]
We have held this protection applied to all the land owned by the person searched, and thus far never made any "open fields" or "expectation of privacy" distinction. Isaacks v. State, 350 So.2d 1340 (Miss. 1970); Davidson v. State, 240 So.2d 463 (Miss. 1970); Helton v. State, 136 Miss. 622, 101 So. 701 (1924). We have never hinged the validity of the search on whether or not there was a "reasonable expectation of privacy," although in Davidson, supra  where a stolen tractor was found beside an abandoned house on land belonging to the defendant  we suggested there could be an invasion of privacy on open lands. 240 So.2d at 464. Of significance to us was that the officers had committed a "trespass" in going on the lands of the defendant.
In interpreting the 4th Amendment the Federal Courts, on land outside the curtilage, have inquired into reasonable expectations of privacy thereasto in determining whether a search warrant is required. United States v. Dunn, supra; Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); United States v. Williams, 581 F.2d 451 (5th Cir.1978). In the Federal courts the fact that the officers committed a trespass and violated the defendant's property right does not necessarily mean there is an impingement on his 4th Amendment right.
We reserve further examination of the validity of searches without the curtilage of the home under § 23 of our state Constitution to the case presenting such necessity.

IV. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF THE 270 DAY RULE?
An accused is given the right to a speedy trial under Miss. Code Ann. § 99-17-1 (Supp. 1987), which states:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
Arnett alleges that this right was violated because 276 days passed before he was brought to trial. He contends that the running of the statute should begin on May 20, 1985, because although the case was continued until the August term of 1985, this was due to the State's dilatory action in not providing discovery. The proceedings of May 20, 1985, consisted of an in-court acknowledgement by both attorneys of all discovery received to that point and of a discussion of what days during the following August term could be used for Arnett's trial. This scenario is further complicated by the fact that the defendant prepared but did not sign a motion for continuance.
There is no written order granting a continuance until the August term, but rather an oral agreement between the attorneys and the judge as to such. Not only did the defendant not object to this, he initially requested that he be allowed time in which to complete other discovery.
Cases dealing with violations of the speedy trial provision are determined on an ad hoc basis. See Brady v. State, 425 So.2d 1347 (Miss. 1983). In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court stated that a balancing test consisting *1011 of four factors was to be used in determining speedy trial issues. These are as follows:
1. Length of delay.
2. Reason of delay.
3. The defendant's assertion of his rights.
4. Prejudice to the defendant.
Id. at 530-532, 92 S.Ct. at 2192-93.
In addition a defendant cannot later complain of delay and right to a speedy trial unless there was a contemporaneous objection. State v. Davis, 382 So.2d 1095 (Miss. 1980).
We find that Arnett's right to a speedy trial was not violated. On a motion by the defendant, the case was continued until May 20, 1985. Again, on May 20 the case was reset until August 26, 1985. Because the defense counsel actively participated in this resetting which was beneficial to his case, and because he failed to state any objection to the resetting, the statute remained tolled until August 26, 1985, at which time it began to run. Consequently, only 180 days passed before Arnett was brought to trial  well within the statutory limit.

V. WAS THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Arnett argues that his conviction was against the overwhelming weight of the evidence. He has no dispute with being found guilty of possession of the marijuana found in the dishwasher, which weighed 6.94 grams, an amount less than a kilogram. He does contend, however, that it was not proved that he had dominion, control or constructive possession over the marijuana found in the El Camino and in the storm shelter, and, therefore, that he is not guilty of possession of marijuana in an amount greater than one kilogram. For this proposition Arnett relies on Keys v. State, 478 So.2d 266 (Miss. 1985), which states: "An item is within one's constructive possession when it is subject to his dominion or control. Constructive possession may be established by direct or circumstantial evidence." Id. at 268.
Arnett argues that because the El Camino and Chevy truck in which marijuana or marijuana residue was found did not belong to Arnett but to Tolson and Patrick, then it is Tolson and Patrick who were in constructive possession of the marijuana. This argument, however, fails to take into account that possession of contraband may be joint or individual. In Wolf v. State, 260 So.2d 425 (Miss. 1972), the defendant used much the same argument as appellant when he was convicted of possession of marijuana. The defendant in Wolf had been at a party attended by about 50 people and his car in which contraband was found was parked just outside the apartment. Id. at 432. Consequently, Wolf argued that anyone could have placed the marijuana in his car. Id. We rejected this argument, stating that the evidence showed that the car belonged to Wolf, that he had been driving it, that the marijuana was found in it, and that these circumstances were sufficient to support the jury's finding of guilt. Id. We also pointed out that the fact that someone else may have placed the marijuana in his car was a factor to be considered and that the jury could have found that the defendant was unaware of the marijuana. Id.
Likewise, in the case at bar evidence was presented to the jury that the El Camino and the Chevy did not belong to Arnett and that it was possible that he had had no knowledge of the marijuana. The jury, however, was justified in finding that Arnett did have constructive possession over his storm shed and the automobiles on his property. In Curry v. State, 249 So.2d 414 (Miss. 1971), the Court stated:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient fact to warrant a finding that defendant was aware of the precedence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown *1012 establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element but by itself is not adequate in the absence of other incriminating circumstances.
Id. at 416.
Consequently, the jury was justified in its finding that Arnett was in possession of not only the marijuana in his dishwasher, but also that in the El Camino and in the storm shed.

VI. DID THE JUDGMENT OF THE COURT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?
Arnett contends that the terms of his sentence were illegal and violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The trial judge sentenced the appellant to 14 years in the state penitentiary with seven years suspended if the appellant paid a $125,000 fine. This sentence is similar to a sentence given in Payne v. State, 462 So.2d 902 (Miss. 1984), in which a defendant, convicted of possession of a controlled substance, was sentenced to seven years with two years suspended if he paid a $3,000 fine. Id. at 904.
This Court noted that any question on Equal Protection grounds was premature because there was nothing in the record to show that the defendant was indigent. Id. at 905. Likewise, no mention has been made in this record showing the appellant to be indigent and, therefore, his allegation of Equal Protection violations is premature.
The Supreme Court in Payne, however, did remand the case for resentencing, finding that the sentence was not definite and was not in accordance with Miss. Code Ann. § 47-7-33 (1972), which states in pertinent part:
When it appears to the satisfaction of any circuit court or county court in the state of Mississippi, having original jurisdiction over criminal actions, or to the judge thereof, that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, such court, in term time or in vacation, shall have the power, after conviction or a plea of guilty, except in a case where a death sentence or life imprisonment is the maximum penalty which may be imposed or where the defendant has been convicted of a felony on a previous occasion in any court or courts of the United States and of any state or territories thereof, to suspend the imposition or execution of sentence, and place the defendant on probation as therein provided, except that the court shall not suspend the execution of a sentence of imprisonment after the defendant shall have begun to serve such sentence. In placing any defendant on probation, the court, or judge, shall direct that such defendant be under the supervision of the department of corrections. [Emphasis added]
The Court in Payne found the sentence to be indefinite because it allowed the trial court to suspend sentence at any time prior to completion of the term, and accordingly, this was a violation of the statute. Payne, 462 So.2d at 906. See also Carter v. State, 524 So.2d 325 (Miss. 1988).
In construing the effect of Miss. Code Ann. § 47-7-33 (1972), the Supreme Court in Denton v. Maples, 394 So.2d 895 (Miss. 1985), stated:
Under section 47-7-33, the suspension can only be made immediately "after conviction or a plea of guilty". The statute also contains this language which sheds light on its meaning: "to suspend the imposition or execution of sentence," and "except that the court shall not suspend the execution of a sentence of imprisonment after the defendant shall have begun to serve such sentence." [Emphasis original]
All of this language supports our opinion that the only time a trial judge can suspend a sentence is immediately after the defendant is convicted and at the time the trial judge announces and imposes sentence. If no appeal is perfected and defendant begins to serve the sentence imposed, the time has passed for *1013 the trial judge to suspend the sentence under § 47-7-33.
Id. at 898-899.
The above authority makes it clear that the trial judge was in error when he conditioned seven years of appellant's sentence upon the payment of a fine.
The appellee's reliance on Miss. Code Ann. § 99-19-20(1)(c) (1972) is misplaced. The appellee argues that this section gives trial judges the authority to condition sentence on the payment of fines. In fact, this statute deals with the imposition of a fine as the sentence, and states that one may thereafter be imprisoned if (s)he fails to pay the fine unless there has been a showing of indigency. Miss. Code Ann. § 99-19-20(1)(c) (1972).
We therefore remand for proper sentencing under the guideline of Payne v. State, 462 So.2d 902 (Miss. 1984).
CONVICTION AFFIRMED; REMANDED FOR PROPER SENTENCING.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
ANDERSON, J., not participating.
NOTES
[1] The 4th Amendment reads:

AMENDMENT IV  SEARCHES AND SEIZURES
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [Emphasis added]
Note the slight difference in wording, the 4th Amendment using "persons, houses, papers, and effects," and § 23 "persons, houses and possessions."