607 So.2d 1132 (1992)
Dexter CARSON
v.
STATE of Mississippi.
No. 89-KA-1068.
Supreme Court of Mississippi.
August 19, 1992.
*1133 Claude H. Powell, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Patricia W. Sproat, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROY NOBLE LEE, Chief Justice, for the Court:
Dexter Carson was indicted, tried and convicted in the Circuit Court of Washington County, Mississippi, on a charge of robbery and was sentenced to fifteen (15) years as an habitual offender. He has appealed to this Court and presents four issues.
We have carefully examined those issues and find that three have no merit and we consider only the fourth, which follows:
DID THE LOWER COURT ERR IN DENYING CARSON'S MOTION TO DISMISS THE INDICTMENT ON THE GROUND THAT THE 270 DAY RULE WAS VIOLATED (TITLE 99, CHAPTER. 17, SECTION 1, MISS.CODE OF 1972)?

FACTS
Lynn Hung, twelve years old at the time this crime was committed, testified that she was the daughter of Tin Po Hung, owner of Sun Sing Grocery in Greenville. On Sunday, February 7, 1988, she was working behind the counter of the store, while her sister was in the back. Dexter Carson, whom she knew because he was often in the store, was sitting there on the ice cream box. The phone rang and, when Lynn answered it, Carson approached the counter and leaned over, as if reaching for something. She thought he might have been reaching for the money bag behind the counter, so she grabbed it and asked Carson what he was doing. Carson went back and sat on the ice cream box for two to three minutes, then walked toward, and around, the counter.
Lynn began "beeping" on the intercom (that apparently went to her parent's home), but it would not work. She testified that Carson came behind the counter and put his arm around her and that they began struggling for the money bag. He hit her in the back, she fell and Carson took the money bag. At about the same time, her sister emerged from the back of the store and chased Carson as he fled. Lynn called the police and later went to the police station and picked out Carson's picture from a number of other pictures. She testified that the bag Carson took contained about $2,000 in cash, checks and food stamps.
Lucy Hung, Lynn's sister, testified that she had been working in the store before Lynn arrived and that Carson had been in the store talking with Ronnie Simon. Simon left and then two children came into the store and wanted to buy some meat. Since she had to go to the back in order to cut the meat and she never left the front of the store unattended, she called Lynn on the intercom and had her come to watch the front of the store. While she was in the back, she looked up and saw Carson behind the counter fighting with Lynn. She went up front and Carson ran away. Lynn, frightened and upset, stayed behind the counter.
Ronnie Simon testified that he had known Carson for about seventeen years. On February 7, 1988, he met Carson while on his way to the Sun Sing Grocery and they went into the grocery store together and bought cigarettes. When they went back outside the store, Carson showed him a letter from either the District Attorney or his own lawyer. The letter discussed an offer of five years on a previous charge against Carson. According to Simon, Carson told him that he could not do the time and that he needed money to go see his *1134 brother in Gary, Indiana. The two went back into the store, then Carson told Simon that as soon as the two children left, he was going to rob the store by knocking "her" out with a brick. Simon, who had just been paroled from Parchman and wanted no part of a robbery, played the true hero and left the store.
After calling the witnesses and Greenville Police Officer Willie L. Hampton, the State rested. Carson had cross-examined only Officer Hampton. His defense rested entirely on legal grounds, since he presented no evidence in opposition to the State's case. Carson offered his own testimony for the limited purpose of establishing the alleged violation of the 270 day rule. Carson testified that he had been arrested by the Dallas Police Department and jailed since June 24, 1988, on a charge of aggravated assault committed in Dallas. Carson had not been at liberty since his arrest.

DISCUSSION
We recognize that the 270 rule as set forth in Miss. Code Ann. § 99-17-1 (Supp. 1991) has been well litigated in the past several years. Recently, the Court stated, "we have held that § 99-17-1 is plain and unambiguous and requires trial of a defendant no later than 270 days after his arraignment unless good cause is shown for trial after 270 days." Ford v. State, 589 So.2d 1261, 1262 (Miss. 1991) (citing Turner v. State, 383 So.2d 489, 491 (Miss. 1980); Yarber v. State, 573 So.2d 727 (Miss. 1990); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Payne v. State, 363 So.2d 278, 279 (Miss. 1978).
In contrast, the Court has held that in cases which go to trial beyond the 270 day limit where the delay was attributable to good cause and an order continuing the case was entered, the cases were properly permitted to be tried. In Arnett v. State, 532 So.2d 1003 (Miss. 1988), this Court did uphold a conviction obtained at a trial begun 276 days after arraignment and where no order of continuance was entered. However, the facts of Arnett are not on all fours with the case here. Arnett does, however, provide authority for construing an oral agreement between the trial court and the opposing attorney as a valid continuance. Too, it condemns those who fail to contemporaneously object to a trial delay and then later try to claim their speedy trial guarantee.
The record reflects that the trial judge made the following comments and finding with reference to the setting of the case at bar:
BY THE COURT: This Court's dockets, both civil and criminal, are heavy. In this term there were, if I'm not mistaken, two hundred and thirty some odd indictments returned, which was a record number for Washington County. If I'm not mistaken, in the ... one of the earlier terms there was one hundred ninety and some odd indictments returned, which at that time was a record for Washington County.
This Court's terms are broken down in alternating weeks between civil and criminal. The trials which have been mentioned by the defense were the criminal trials; they do not take into consideration the civil trials.
This Court has offered to try to dispose of some of these criminal cases in civil weeks on more than one occasion, and in each instance the Public Defender's Office has insisted that none of their cases be set during those civil weeks because of their work load, which the Court understands.
This Court has also inquired previously, unless I am grossly in error, of the County Judge for Washington County as to whether he would try some cases to help clear this docket and the Court was advised that he did not desire to take on any of the Circuit Court caseload, and under the statute he has to concur before they can be assigned to him.
The fact that Monday was the 271st day ... the 270th day was brought to the Court's attention on Monday at the time that it was asked that this case be reset for this day, being the earliest day then available for the Court's docket. The Court found that in light of all of the circumstances that the spirit of the law *1135 was certainly not violated. Whether the letter of the law was violated in such a manner as to prohibit us from trying this case, some appellate Court will have to determine because this Court finds the motion is not well taken ... ... .
BY MR. FISBIE: Judge, may I take one ... ...
BY THE COURT: ... . . and is denied.
BY MR. FISBIE: ... . . since I'm overruled, but I would like to make one comment.
BY THE COURT: All right.
BY MR. FISBIE: And that is about the setting during the civil week. I would point out ...
... .
BY THE COURT: All right, the Court also thinks that the record, since it's going to contain a complete history and it doesn't at the present time, probably needs to reflect  and I don't have the exact figures, but I would assume approaching fifty cases have been dismissed this term on 270 day rule. There have been, I would guess, in the past several months another fifty cases or so dismissed by this Court with the 270 day rule; and this docket, since motion... the request to have copies of the docket attached will be granted, will reflect that there were six cases set for each day in the criminal week during this term.
There are unusual facts present in this case. The circuit court was in session and on Monday the case was called and was set, or reset, for Friday of that week behind another case. Monday was the 270th day of court and the appellant was before the court and, presumably, in the court. The court machinery was working on his case. He was awaiting his time upon the other case, which was being tried first. No objection was made to the setting and the appellant acquiesced in the same.
The next day, the 271st day, the appellant filed a motion to dismiss for violation of the speedy trial (270 day) rule. The lower court overruled that motion on Friday, the date set for trial, and began the appellant's trial. In Williamson v. State, 512 So.2d 868 (Miss. 1987) (reversed on other grounds), this Court held that good cause existed for granting a continuance and that such action tolled the statute. Adams v. State, 583 So.2d 165, 167 (Miss. 1991) (citing Williamson, supra) held likewise. The action of the trial judge in resetting the case for Friday, during the term of court, certainly should come within that principle.
We are of the opinion that under the facts of this case, the lower court was not in error in overruling the motion to dismiss for violation of the 270 day rule.
The judgment of the lower court is affirmed.
CONVICTION OF ROBBERY, AS A HABITUAL OFFENDER AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, J., concur.
ROBERTSON, J., dissents with separate written opinion joined by SULLIVAN, BANKS and McRAE, JJ.
PITTMAN, J., not participating.
ROBERTSON, Justice, dissenting:
Analogies have long aided legal analysis. If perchance you should have tickets on flights scheduled to leave simultaneously, one for London and the other to Tokyo, you must make a choice, and when you have made that choice, the other ticket and flight are forfeited. A reasonable man would not think the fact that he cannot fly two places at once grounds for a raincheck. A Bostonian with tickets to the Celtics and the Symphony the same night must make a similar choice.
The State of Mississippi entered August 14, 1989, with a ticket to try Dexter Carson for robbery. By all accounts, that ticket expired at midnight. The State chose instead to try another, but four days later returned with its Carson ticket. The Court today employs a bit of judicial legerdemain and finds in the original Carson ticket a *1136 raincheck said to emanate from the spirit of the 270-day rule, Miss. Code Ann. § 99-17-1 (Supp. 1991). The spirit in our 270-day rule is in its form, and in its form it is like a statute of limitations. It is a hard edged case decider rule providing a line of demarcation that those but an inch either side may know where they stand. Ford v. State, 589 So.2d 1261 (Miss. 1991); Moore v. State, 556 So.2d 1031 (Miss. 1990). It is a rule whose form rejects the manipulability experience has found in constitutionally imagined balancing tests, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that have spawned so much unproductive satellite litigation, leaving in its wake results so arbitrary and capricious. Contrast Spencer v. State, 592 So.2d 1382 (Miss. 1991), and Adams v. State, 583 So.2d 165 (Miss. 1991), with State v. Ferguson, 576 So.2d 1252 (Miss. 1991); and Bailey v. State, 463 So.2d 1059 (Miss. 1985). The Barker balancing tests are seen singularly unable to provide either sinner or society a speedy trial.
I have always thought it an attribute of law that it renders non-optional many things we might otherwise want to do. That law limits government as well as citizens is one of our nation's enduring gifts to the world. By its terms, our 270-day rule proscribes prosecutorial temptation to convince itself there is good reason to delay a given trial. It does so to the end our focus may remain fixed upon the tree that must be pruned that it live, though the cutting of a given limb may be jarring at the moment.
The State concedes Dexter Carson had no hand in causing the delay. It offers no reason why someone else was tried on August 14, 1989, instead of Carson. Yet we are told Carson made no objection to the new, four days late "setting" and that he "acquiesced in the same." Horsefeathers! An accused has no duty to bring himself to trial. See, e.g., State v. Ferguson, 576 So.2d 1252, 1255 (Miss. 1991); Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990); Jaco v. State, 574 So.2d 625, 632 (Miss. 1990); Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988); Fisher v. State, 532 So.2d 992, 996 (Miss. 1988); Williamson v. State, 512 So.2d 868, 877 (Miss. 1987); Reed v. State, 506 So.2d 277, 281 (Miss. 1987); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Turner v. State, 383 So.2d 489, 491 (Miss. 1980). Way back on November 23, 1988, Dexter Carson made written
demand for a speedy jury trial and asked that the same be placed upon the minutes and that he be tried at this term of court, or in default of such trial, that he be fully acquitted and discharged for said trial.
If demand be necessary, which it is not, I would have thought this adequate.
On November 17, 1988, the Circuit Court signed an order telling one and all
the Two Hundred Seventy (270) day period for the trial of this case pursuant to MCA § 99-17-1 begins from ... [this] date... .
Carson's demand and right notwithstanding, the state did not get around to setting a trial until August 14, 1989  the 270th day. Dexter Carson moved not a muscle to impede the process of the Court that day or any of the preceding 269.
I cling to the view it is better that the plane always leave on time and, on the whole, the public is better served when all abide the schedule, so long only as it is reasonable, a fact beyond dispute as the 270-day period alotted for trials in this state is among the most lenient anywhere. I would hold the State to its choice not to board the Carson plane the day by law it was set to leave. I would reverse and render.
SULLIVAN, BANKS and McRAE, JJ., join this opinion.