PAYNE, J.,
dissenting:
¶ 11. I respectfully dissent. Based on my review of the record before the Court, this is plainly not a case where “the evidence is such that reasonable and fair-minded jurors could only-find the accused not guilty.” Johnson v. State, 749 So.2d 1251 (¶ 7) (Miss.Ct.App.1999). It is clear to me that the prosecution presented sufficient evidence to support the conviction under our present law of constructive possession of illegal and controlled substances.
¶ 12. In Arnett v. State, 532 So.2d 1003, 1011-12 (Miss.1988), the Mississippi Supreme Court held:
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of “possession” is a question which is not susceptible of a specific rule. However, there must be sufficient fact to warrant a finding that the defendant was aware of the precedence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown establishing that the drug involved was subject to his dominion and control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
*1005 (quoting Curry v. State, 249 So.2d 414, 416 (Miss.1971)). More recently, in Roberson v. State, 595 So.2d 1310, 1319 (Miss.1992), the Mississippi Supreme Court addressed constructive possession again:
Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by evidence showing that the contraband was under the dominion and control of the defendant.
Id. at 1319 (citing Vickery v. State, 535 So.2d 1371, 1379 (Miss.1988)). The contraband need not be found on the defendant’s person. Curry, 249 So.2d at 416. However, “[wjhere the defendant is not in control of the premises, that is, the car, the State has the burden of proving competent evidence which would connect the defendant to the cocaine.” Alexander v. State, 749 So.2d 1031 (¶ 10) (Miss.1999) (citing Campbell v. State, 566 So.2d 475, 476 (Miss.1990)).
¶ 13. Since Spurlock was not in exclusive possession of the vehicle in which he was a passenger at the time he constructively possessed the marijuana and cocaine in question, then the burden rested with the prosecution under Campbell to connect Spurlock to the cocaine. In my view, the testimony of Agent Erik Allen and Officer David Elson supplies this vital connection.
¶ 14. Agent Allen testified that he was on a narcotic detail at the Playhouse establishment the night of Spurlock’s arrest. As he approached the vehicle in which Spurlock was seated as a front seat passenger, he noticed Spurlock open the passenger’s door and lean out in an apparent “effort to place something under it [the car].” Allen further testified that no other passenger leaned out of the car in such a manner, and that the contraband was found in the tire tracks immediately under the car where Spurlock had reached. Officer Elson testified that he, too, saw Spur-lock lean out of the car and reach under the vehicle. Elson noted he saw no other passenger in the vehicle reach under the car, and he confirmed that the contraband was found in the tire tracks, which in Elson’s opinion were fresh, near where Spurlock was seated. Further testimony indicates that the area where the drugs were discovered was controlled by law enforcement officers. This is significant in that there was no reasonable opportunity for another party to have placed the narcotics in the tire tracks under the car near where Spurlock had been seated as a passenger.
¶ 15. Spurlock also testified in his own behalf, noting his dismay at his arrest for possession of narcotics when no contraband was found on his person. Quoting from Spurlock’s testimony, when Agent Allen informed Spurlock of his arrest, Spur-lock quizzed Allen: “I asked him, I said, [y]ou did not, I didn’t have any drugs on me, how can you arrest me for possession of crack cocaine? He said, I didn’t have to find any drugs on you, I found them underneath the car. And he said, I said, [w]ell, that’s not right, I mean, I don’t have any drugs on me, that man searched me, I don’t have any drugs.” Spurlock maintains that he only had house keys in his possession at the time of his arrest. Spur-lock also testified on direct examination about his prior conviction for cocaine possession.
¶ 16. It seems to me this verdict turned on the credibility of the witnesses in this ease, and I believe the jury was entitled to believe Allen and Elson over Spurlock. Further, Spurlock’s obvious emphasis on the fact that no contraband was found on his person, combined with his convenient failure to explain to the jury the allegation that he leaned out of the car as the officers approached the vehicle and his own testimony about his prior cocaine conviction, was more than a sufficient basis on which the jury could have reasonably found Spurlock guilty of the crimes charged.
¶ 17.1 would affirm.
*1006 SOUTHWICK, P.J., BRIDGES AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.